**ROBERDEAU v. INDEMNITY INS. CO. OF NORTH AMERICA et al.**

No. 9889.

Court of Civil Appeals of Texas. Austin.

June 28, 1950.

Rehearing Denied July 26, 1950.

Cofer & Cofer, John D. Cofer, all of Austin, for appellant.

Coleman Gay, of Austin, for appellees.

GRAY, Justice.

Appellant was the owner of an automobile which was damaged in a collision and, at the time, carried a policy of insurance issued by appellee covering such damages, but containing a $100 deductible clause.

The automobile was a 1947 Plymouth Station Wagon with a designated value of $2,229.62. The damages sustained consisted, in part, of damage to the frame and to the body which was made almost entirely of wood. Immediately after the collision, the automobile was taken to the agency from which it was purchased and there repairs were made amounting to $575. After some negotiations, appellee made a final offer to appellant to pay $475, in full settlement of its obligation under its contract of insurance. This offer was refused and appellant paid for said repairs, took possession of the automobile, and has

since used it for the same purposes for which it was used prior to the collision.

The policy provides:

"(1) A coverage for collision or upset as the actual cash value of the automobile, less $100 deductible.

"(2) The limit of the company's liability for loss shall not exceed the actual cash value of the automobile, or if the loss is of a part thereof the actual cash value of such part, at time of loss nor what it would then cost to repair or replace the automobile or such part thereof with other of like kind and quality, with deduction for depreciation, nor the applicable liability stated in the declarations.

"The company may pay for the loss in money or may repair or replace the automobile or such part thereof, as aforesaid, or may return any stolen property with payment for any resultant damage thereto at any time before the loss is paid or the property is replaced, or may take all or such of the automobile at the agreed or appraised value but there shall be no abandonment to the company."

Appellant filed this suit against appellee to recover for the damages sustained to the automobile, and alleged that immediately prior to the collision the automobile had a cash market value of $2,229.62, and immediately after the collision such value was $935. Further alleged that the repairs that were made did not restore the automobile to its condition and value prior to the collision and that it is impossible to further repair it so as to restore it to such condition. The petition prayed for judgment for $1,194.62. (The difference in the value of the automobile before and after the collision, less $100 deductible.)

Appellee answered by general denial, admitted liability to the extent of $475, and renewed its tender for this amount.

A non-jury trial resulted in a judgment for appellant for $475, denied him a recovery of any sum in excess of that amount, and adjudged the costs against him.

The trial court filed findings of fact and conclusions of law and found that the reasonable cash market value of the automobile immediately before the collision was $2,229.62; that immediately after the collision such value was $935; that after it was repaired such value was $1,500, and that appellant refused to accept the repairs made as a settlement of his claim; that appellee acknowledged liability and tendered appellant $475, in full settlement of such liability, which tender was refused. Further findings are:

"15. The repairs made on plaintiff's motor vehicle did not restore plaintiff's motor vehicle to the same or as good condition as immediately prior to the collision. The making of said repairs did, however, restore the car to serviceable condition; and the plaintiff has driven and used said car since its repair for the same purposes for which it was used prior to the collision.

"16. It was possible to repair the said motor vehicle to the same or as good condition as it was immediately prior to the collision by putting a new body on said motor vehicle.

"17. The defendant did not replace the old body with a new body, and has never offered to do so; nor has the plaintiff specifically requested that the old body be replaced with a new body."

Appellant requested the trial court to find that it was not feasible to replace the body of the automobile with a new body, and that to replace the body with a new body would involve an expenditure out of proportion to the market value of the automobile as so repaired. This request was refused and appellant excepted.

The evidence shows that, along with other repairs made to the automobile, some repairs were made to the body but that further repairs could not be made without sending it back to the factory because facilities for making such repairs are not available "in the field." The witness George Covert said:

"Q. I believe you have stated that this station wagon had been repaired about as well as it could be? A. I think they did a pretty good job on it, yes, sir.

"Q. Well, do you think it was possible to make further repairs to it? A.

Well, of course, they could have replaced the entire body on the thing. That would be repairing it better than what they did. That would have been the only way I know of that they could have gotten the kinks out of it. I don't know any way to do it in the field.

"Q. Well, anyway, so far as you know, unless they did replace the entire body, they had made all the repairs that could possibly be made? A. I think they did about as good as possible, as well as I could see."

There was no evidence of what the cost of having the body repaired to its former condition would be; the cost of replacing it with another of like kind and quality; nor the actual cash value of the body.

The trial court found that the repairs made did not restore the automobile to the same or as good condition as it was in immediately prior to the collision, and that this could be done by putting a new body on the automobile.

■ We think that under the above quoted provisions of the policy appellee is liable for damages to the automobile to the extent of its actual cash value, and is obligated to either repair or replace the damaged part (or the automobile), with another of like kind and quality, allowing a deduction for depreciation. Privileged, however, to exercise its option of paying for the loss in money or making the repairs or replacements. Anything less than that would not be a discharge of appellee's liability under the policy. Standard Accident Ins. Co. v. Richmond, Tex.Civ.App., 297 S.W. 879., Er.Dis.; Home Ins. Co. v. Fouche, Tex.Civ.App., 149 S.W.2d 977. The mere fact that the automobile was repaired to the extent that it was used for the same purpose for which it was used prior to the collision would not discharge appellee's liability because appellant has the right to claim full compensation for his loss to the limit fixed by the policy. 45 C.J.S., Insurance, § 911, page 1005.

Since the evidence shows, and the trial court found, that the repairs made did not restore the automobile to the same or as good condition as it was in immediately prior to the collision, and further that it was possible to so repair it, we think these findings must be construed as a finding that appellee has not discharged its liability. As stated in the policy, such liability is a sum not exceeding the actual cash value of the automobile. The trial court did find that the "reasonable" cash market value of the automobile immediately before the collision was $2,229.62, but there is no finding, and no evidence, of the cost of repairing the body, replacing it, or the actual cash value thereof.

■ We do not agree with appellant that the measure of his damage here is the difference in the reasonable cash market value of the automobile immediately before and after the collision, since the contract of insurance does not so provide. Home Ins. Co. v. Fouche, supra; 45 C.J.S., Insurance, § 915-C, page 1013. In support of this theory of his measure of damage appellant testified that because the automobile was damaged in the collision it could not be restored to its former condition, and after repairs its value would still be that of a wrecked automobile. We are not impressed with this view because: (1) it is an issue of fact as to whether or not the repairs do or do not restore the automobile to its former condition, and (2) to apply such measure of damage would be arbitrarily reading out of the policy the right to make repairs and replacements.

We think the trial court did not err in refusing to find that it was not feasible to replace the body with a new body. The feasibility of making repairs or replacements is not a condition of appellee's contract, could not determine appellee's liability, and could be material only in aiding appellee in electing to pay for the loss or making repairs.

■ Because it is our opinion that it is necessary to reverse and remand this cause in order to further develop the facts as to appellant's damage, the judgment of the trial court is reversed and the cause is remanded.

Reversed and remanded.