**GREAT TEXAS COUNTY MUTUAL INSURANCE CO., Appellant,**

v.

**Emmett C. LEWIS, Appellee.**

No. 03–98–00118–CV.

Court of Appeals of Texas, Austin.

Nov. 5, 1998.

David C. Colley, Fletcher & Springer, L.L.P., Dallas, for Appellant.

Mark M. Humble, Michael D. Goains, Humble & Humble, L.L.P., Cameron, for Appellee.

Before POWERS, JONES and KIDD, JJ.

POWERS, Justice.

Great Texas County Mutual Insurance Co. ("the Company") appeals from a trial court judgment that awards Emmett Lewis, the Company's insured, a money judgment in his suit to recover on his automobile-insurance policy. We will affirm the trial court judgment.[1]

## THE CONTROVERSY

The facts are undisputed. While covered by a policy issued by the Company, Lewis's 1989 Dodge Caravan motor car sustained damage to the engine. The automobile had been driven 110,000 miles at the time. The Company inspected the automobile and calculated the cost of repairing the damage to be $3,608.27, which included the cost of a re-manufactured engine, replacement parts, and labor. From the $3,608.27, the Company subtracted the policy deductible of $527.00 and $2,031.72 for betterment or depreciation, leaving a net sum of $1,049.55. The Company offered Lewis that sum to discharge the Company's obligation under the property-damage section of the policy.

Alleging his coverage did not authorize the $2,031.72 deduction for betterment or depreciation, Lewis sued the Company on his policy to recover the $3,608.27 estimated cost, less the policy deductible of $527.00, together with other sums not in dispute. The trial court concluded the policy did not authorize a deduction for betterment or depreciation and rendered judgment accordingly.

In the Company's appeal, the sole issue is one of law: whether the language of the policy authorized the deduction of $2,031.72 claimed by the Company for betterment or depreciation.

## DISCUSSION AND HOLDINGS

■ Concerning damage to a covered automobile, the policy provided as follows under the heading "Limit of Liability":

Our Limit of Liability for loss will be the lesser of the:

1. Actual cash value of the ... damaged property;

2. Amount necessary to repair or replace the property with other of like kind and quality; or

3. Amount stated in the Declarations of this policy.

In its first point of error, the Company complains "[t]he trial court erred in concluding as a matter of law that the phrase 'like kind and quality' does not allow an insurer to deduct for betterment or depreciation." We disagree.

"In arriving at the correct measure of damages in an action to recover under an automobile collision policy, it must be kept in mind that the action *is not a suit for damages* but one on the contract of insurance, and that therefore ... *the language of the contract sued upon must prevail....*" L.S. Tellier, Annotation, *Measure of Recovery by Insured Under Automobile Collision Insurance Policy*, 43 A.L.R.2d 327, 329 (1955) (emphasis added).

The contract provision quoted above gave the Company an election. The Company might pay Lewis (1) the actual cash value of the damaged property or (2) the amount necessary to repair or replace the property with another of like kind and quality. After inspecting the engine, the Company elected to pay the "[a]mount necessary to repair or replace the property with other of like kind and quality." The parties agree that the engine required repairs totaling $3,608.27 and that the Dodge Caravan had been driven 110,000 miles when the engine—original to the car—was damaged.

The words betterment and depreciation are not found in the policy. The Company argues, however, that they are necessarily implied because the replacement engine costing $3,608.27 is tantamount to a new engine—it will carry a warranty even though it is re-manufactured. Thus, the rebuilt engine will have an expected useful life much longer than Lewis's used engine that had been driv-

1. After a trial without a jury, the court rendered judgment against the Company in the principal sum of $3,608.27, less a policy deductible of $527.00, or $3,081.27, together with $840.00 for storage costs, $2,968.00 for loss of use of the automobile, $2,700.00 in attorney's fees, and costs of court.

en 110,000 miles when it was damaged. Calculating that the 110,000 miles were equivalent to three-quarters of the useful life of the damaged engine,[2] the Company argues that Lewis will receive an equivalent windfall unless the Company is allowed its claimed entitlement to a deduction for betterment or depreciation. We should say, however, that the Company's interpretation must be one sanctioned by the language of the policy. We believe that is not the case.

It is generally accepted that depreciation is a factor to be considered when an insurer elects to pay the "actual cash value" of the damaged property, which the Company declined to do here. *See* Wendy Evans Lehmann, Annotation, *Depreciation as Factor in Determining Actual Cash Value for Partial Loss Under Insurance Policy*, 8 A.L.R.4th 533, 539 (1981).[3] By electing to pay Lewis the "amount necessary to repair or replace" the engine with another "of like kind and quality," we believe the Company elected a measure of loss that does not allow for depreciation.

■ The words "repair" and "replace" mean restoration to a condition substantially the same as that existing before the damage was sustained. *See Northwestern Nat'l Ins. Co. v. Cope*, 448 S.W.2d 717, 719 (Tex.Civ. App.—Corpus Christi 1969, no writ); Appleman, *Insurance Law and Practice* § 4004, at 710 (6th ed.1972). Because Lewis's automobile was a functioning or operating automobile before the damage, the Company was required to pay an amount necessary for a repaired or replacement automobile of that character. The qualifying words "of like kind and quality" permit but do not require an engine of similar age, use, condition, or present cash value; they refer simply to

repairing the damaged automobile so that it is suitable or fit for its intended purpose. *See* Rhodes, *Couch on Insurance* § 54:148, at 536–37 (2d. rev. ed.1983); Appleman, *supra,* § 4005 at 724 ("If the insurer elects to repair, such repairs must make the car as serviceable as it was before the loss.").

■ When an insurer elects to repair, the insured is entitled to the amount required to repair the automobile. *Agricultural Workers Mut. Auto Ins. Co. v. Dawson*, 424 S.W.2d 643, 645 (Tex.Civ.App.—Tyler 1968, no writ). The insurer's obligation in such a case is not discharged until the insurer pays the cost of repair less any deductible specified in the policy. Appleman, *supra*, § 4005 at 726. The only evidence in the record regarding the cost of repairing Lewis's automobile is the agreed sum of $3,608.27; the specified deductible is $527.00.[4]

If the Company may discharge its obligation by paying Lewis $1,049.55, he will not have, under the evidence, a sum sufficient to restore his engine and automobile to a functioning or operating state. He will be deprived of the protection ostensibly purchased in his policy—protection against the risk of having to pay out of his own pocket to restore his motor car and its component parts to a functioning or operating state in the event they were damaged.[5] *See Farmers Mut. Protective Ass'n of Tex. v. Cmerek*, 404 S.W.2d 599, 600–01 (Tex. Civ.App.—Austin 1966, no writ) ("The insurer is not entitled to a deduction for depreciation in the event of a partial loss, as distinguished from a total loss."); *see also Implement Dealers Mut. Ins. Co. v. Cox*, 376 S.W.2d 384, 387 (Tex.Civ. App.—Houston [1st] 1964, no writ) (when partially damaged property covered by an insurance contract can be repaired with new

---

2. The Company introduced evidence that the expected useful life of a re-manufactured engine is 100,000–150,000 miles. An insurance adjuster testified that a 75% "betterment" figure was an industry average for an engine driven over 100,-000 miles.

3. The Annotation declares that it is a matter of "true controversy" whether the "cash value" recoverable for a partial destruction of insured property may be reduced by depreciation when an insurer elects to repair or replace a damaged part. *Lehmann,* 8 A.L.R.4th at 539 n. 28, 550.

4. The evidence adduced at trial focused on the cost of a re-manufactured engine and the issue of "betterment" or "depreciation." Nothing in the evidence pertains to the issue of whether Lewis could acquire and install an operating engine, whether used or of lesser quality, for $1,049.55.

5. *See* Appleman, § 3883, at 65, 66 (Supp.1997) (criticizing two out-of-state courts for allowing deductions for depreciation under insurance policies).

material of like kind and quality, no deduction for depreciation is required); *Gulf Ins. Co. v. Carroll,* 330 S.W.2d 227, 233 (Tex.Civ. App.—Waco 1959, no writ).

The decisions cited by the Company for the opposite proposition are not persuasive. In *Whitson v. Western Agric. Ins. Co.,* 1995 WL 104137, 1995 Ariz.App. LEXIS 66, 186 Ariz. Adv. Rep. 10 (Ariz.App. 1995, no pet.), the court interpreted "like kind or quality" to mean that damaged parts should be replaced with parts of similar age, condition, or cash value. On this basis, the court suggested that the insured would not be entitled to new replacement parts without a deduction for the vehicle's depreciation. Because "like kind or quality" refers to parts fit for their intended purpose rather than parts similar in age, condition, or value to the parts damaged, the Company's reliance on this decision is misplaced. *See Maryland Motor Car Ins. Co. v. Smith,* 254 S.W. 526, 528 (Tex.Civ. App.—Texarkana 1923, no writ).

The Company also relies upon *General Accident Fire & Life Assurance Corp. v. Judd,* 400 S.W.2d 685 (Ky.1966). This decision is inapplicable because no evidence was introduced that the insured's car could be put in substantially as good physical condition as it was before the accident.

Finally, *Tomes v. Nationwide Insurance Co.,* 825 S.W.2d 284 (Ky.Ct.App.1991) involved a dispute over whether an insurance company could employ used parts in repairing an eight-year-old car. The court held it was "not reasonable to expect the insurer to pay for new parts *when less expensive materials can be obtained to restore the car to its former condition.*" *Tomes,* 825 S.W.2d at 286 (emphasis added).

We do not disagree with the *Tomes* court's conclusion; we fail to see, however, how it supports the Company's position. Neither the Company nor Lewis have disputed whether it was proper for the Company to base its payment to Lewis on the value of a re-manufactured or new engine rather than a used engine. Moreover, in concluding that the insurer was not obligated to pay for new parts, the court based its decision on evidence that less expensive materials sufficient to restore the car to its former condition were available. *Tomes,* 825 S.W.2d at 285. In the present case, no evidence was introduced to suggest that Lewis could make the necessary repairs to his automobile for $1,049.55.

By reducing its payment to Lewis by "betterment" or "depreciation," the Company failed to provide Lewis with an amount of money sufficient to make his vehicle as serviceable as it was before the loss.

We overrule point of error one.

In its second point of error, the Company argues that the evidence was legally insufficient to support the trial court's finding that it violated article 21.21 of the Texas Insurance Code. Since the trial court did not award Lewis treble damages for the Company's violation, the finding is moot. We overrule point of error two.

We affirm the trial court judgment.