Dennis CARLTON, Individually and as Representative of All Persons Similarly Situated, Appellant,

v.

TRINITY UNIVERSAL INSURANCE COMPANY, Appellee.

No. 14–99–00825–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 16, 2000.

Mary F. Keller, Austin, Christopher A. Kesler, Sylvia Davidow, Donald B. McFall, Houston, for appellants.

Roger D. Higgins, Dallas, John McEldowney, Scott Derek Daniel, Galveston, for appellees.

Panel consists of Justices ANDERSON, FROST, and CANNON.[*]

## OPINION

KEM THOMPSON FROST, Justice.

This is an appeal of a summary judgment in a class action lawsuit by a policyholder against his insurance company to recover damages for losses suffered as the result of damage to his insured automobile. The policyholder, Dennis Carlton, brought suit against Trinity Universal Insurance Company on behalf of himself and all insureds similarly situated, claiming Trinity was obligated to pay for the "inherent diminished value" of his vehicle. At issue is the scope of coverage and the insurer's limit of liability under the insurance policy.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Carlton purchased a "Texas Standard Personal Auto Policy"[1] from Trinity covering his 1993 *Dodge Spirit* automobile. During the policy period, thieves stole Carlton's vehicle. Carlton promptly notified Trinity of the loss. Although the police were able to recover Carlton's automobile, it suffered damages as a result of the theft. In addition, the thieves put more than 3,500 miles on the vehicle while it was in their possession. Carlton originally asked Trinity to declare his vehicle a total loss because of the extent of the damage and the additional mileage. Trinity, however, determined that Carlton's automobile could be repaired and returned to its pre-theft condition. Carlton authorized Trinity to repair the vehicle, and Carlton had no complaint with the extent, nature, or quality of the repairs Trinity made. However, he alleged that even though the repairs were not improper, inadequate or incomplete, the value of his automobile was diminished as a result of the loss. Carlton asserted that Trinity was required to pay the "inherent diminished value," which Carlton defines as the difference between the pre-loss value of the insured automobile and its value after Trinity repaired it

---

[*] Senior Justice Bill Cannon sitting by assignment.

1. The Texas legislature has delegated to the State Board of Insurance the duty to promulgate a standard and uniform insurance policy for private passenger automobiles. *See* Tex. Ins.Code Ann. § 5.06(1) (Vernon Supp.2000). "A contract or agreement not written into the application and policy is void and of no effect and in violation of the provisions of this subchapter, and is sufficient cause for revocation of license of such insurer to write automobile insurance within the State." Tex. Ins.Code Ann. § 5.06(2) (Vernon Supp.2000). All insurers writing insurance in Texas for private passenger automobiles must use this form. *See id.*

and returned it to him. Carlton alleged that his vehicle's "inherent diminished value" was appraised at no less than $449.90, and that when he traded his repaired automobile to a dealer the same day Trinity returned it to him, he received at least $2,000 less than the "blue book" trade-in value. Trinity refused to pay on the stated grounds that "inherent diminished value" was not a covered loss under the policy.

On July 24, 1998, Carlton's attorney sent a notice letter, under the Texas Deceptive Trade Practices—Consumer Protection Act ("DTPA"), to Trinity's president on behalf of Carlton and all others similarly situated. Enclosed in the letter was a draft of an unfiled original class action petition. The letter demanded that Trinity pay Carlton $3,780.88, which included damages and attorney's fees, within sixty days of receipt of the letter. The letter also demanded, "that Trinity settle on similar terms" with the class defined in the enclosed draft petition. Trinity sent a response letter to Carlton's counsel on August 26, 1998, tendering a check in the amount of $3,780.88 to Carlton individually. The letter did not offer to settle or purport to settle with anyone else. Carlton characterized Trinity's tender as an "offer" and rejected it by a letter dated September 16, 1998.

Carlton brought a class action suit,[2] asserting a number of class claims, including breach of contract and violations of the Texas Insurance Code and DTPA.[3] Trinity moved for summary judgment on three independent grounds; Carlton responded and, in addition, filed a cross-motion for partial summary judgment. The trial court granted summary judgment in favor of Trinity and denied Carlton's motion for partial summary judgment. Carlton filed

a motion for a new trial, which was overruled by operation of law.

## II. ISSUES PRESENTED ON APPEAL

Carlton appeals on five issues.[4] In the second and fifth issues, he alleges the trial court erred in granting summary judgment in favor of Trinity on the grounds that "inherent diminished value" is not a covered loss under the Texas Standard Personal Auto Policy and asserts the trial court should have entered partial summary judgment in his favor because "inherent diminished value" is a covered loss. In his fourth issue, Carlton alleges the trial court erred in granting summary judgment in favor of Trinity on the grounds that Trinity's tender of payment to him alone, in response to a demand letter sent on behalf of both the prospective class members and Carlton individually, bars the DTPA class claims as a matter of law. Finally, in the remaining issue, Carlton alleges the trial court erred in granting summary judgment in favor of Trinity on the grounds that the DTPA correspondence constituted an agreement enforceable under Texas Rule of Civil Procedure 11, settling all class claims as a matter of law. For the reasons explained below, we affirm the judgment of the trial court.

## III. MOTIONS TO STRIKE

■ Before reaching the merits of Carlton's appellate issues, we first address a motion Trinity filed in this court asking us to strike what Trinity describes as "extraneous and improper information" in Carlton's appellate briefing. Trinity's motion is aimed at a portion of the appendix filed with Carlton's appellate brief containing several documents from cases that are not in the appellate record, including: (a) an unpublished summary judgment order

---

2. The trial court granted summary judgment before reaching the class certification issue.

3. All of Carlton's claims below are premised on the notion that Texas automobile insurance contracts require coverage of inherent diminished value.

4. Carlton actually asserts only four issues; the first issue merely states that the trial court erred in granting summary judgment and sets out the summary judgment law without stating how the trial court erred.

that is currently the subject of a separate, unrelated appeal; (b) a document entitled "Stipulation of Damages," apparently from the same unrelated case; and (c) an unpublished interlocutory order denying "Defendant's Motion for Summary Judgment" in another unrelated case.[5] After submission, Trinity, like Carlton, also submitted a document that was not in the appellate record, a bulletin from the Texas Department of Insurance. Our review is confined to the evidence in the appellate record. *See Sabine. Offshore Serv., Inc. v. City of Port Arthur*, 595 S.W.2d 840, 841 (Tex. 1979); *Sewell v. Adams*, 854 S.W.2d 257, 259 (Tex.App.—Houston [14th Dist.] 1993, no writ). It is improper for any party to cite unpublished judgments and orders from various courts as authority when such items do not appear in the appellate record. *See* TEX.R.APP.P. 47.7; *Carlisle v. Philip Morris, Inc.*, 805 S.W.2d 498, 501 (Tex.App.—Austin 1991, writ denied). It is also improper for parties to rely on matters outside the record in making arguments to the court. *See, e.g., Melendez v. Exxon Corp.*, 998 S.W.2d 266, 280 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (holding parties are to confine their arguments and factual recitations to matters contained in the record). Therefore, we shall strike and not consider the improper items submitted by both Carlton and Trinity and shall confine our review to the appellate record.

## IV. STANDARD OF REVIEW FOR SUMMARY JUDGMENTS

We review summary judgments in accordance with the following rules:

(1) The movant has the burden of showing there is no genuine issue of material fact and that he is entitled to judgment as a matter of law;

(2) In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and

(3) Every reasonable inference must be indulged in favor of the non-movant, and any doubts will be resolved in favor of the non-movant.

*See Metromarketing Servs., Inc. v. HTT Headwear, Ltd.*, 15 S.W.3d 190, 193–94 (Tex.App.—Houston [14th Dist.] 2000, no pet.) (citing *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997)). A movant is entitled to summary judgment when it negates at least one element of the plaintiff's theory of recovery or pleads and conclusively establishes each element of an affirmative defense. *See Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997). In reviewing the denial of a motion for partial summary judgment, we use the same standard of review that governs the granting of a summary judgment. *See Am. Broad. Cos., Inc. v. Gill*, 6 S.W.3d 19, 27 (Tex.App.—San Antonio 1999, pet. denied); *Evans v. Dolcefino*, 986 S.W.2d 69, 75 (Tex.App.—Houston [1st Dist.] 1999, no pet.). When a trial court grants summary judgment for one movant and denies it for another without specifying the reason for its ruling, we may affirm the trial court's judgment if any of the grounds raised in the prevailing party's motion are meritorious. *See Camco Int'l, Inc. v. Perry R. Bass, Inc.*, 926 S.W.2d 632, 635 (Tex.App.—Fort Worth 1996, writ denied). However, if the non-prevailing movant raised meritorious grounds in its previously denied motion, then we may reverse and render judgment in favor of that party. *See id.*

## V. CONSTRUCTION AND INTERPRETATION OF INSURANCE POLICY PROVISIONS

In his second issue, Carlton asserts the trial court erred in granting summary judgment in favor of Trinity on the

---

**5.** Trinity filed another motion to strike portions of Carlton's post-submission briefing. Although Trinity characterized this filing as its third motion to strike, there are only two such motions on file. We denied this second motion, resolving to consider only those documents that are part of the appellate record.

grounds that "inherent diminished value" is not a covered loss under the Texas Standard Personal Auto Policy. In Carlton's fifth issue, he asserts that "inherent diminished value" is covered under the policy as a matter of law and, therefore, we must render partial summary judgment for him.

### A. Applicable Rules of Construction and Interpretation

 We interpret insurance policies in accordance with the rules of contract construction. *See Kelley–Coppedge, Inc. v. Highlands Ins. Co.,* 980 S.W.2d 462, 464 (Tex.1998). In applying these rules, our primary concern is to ascertain the parties' intent as expressed in the policy. *See id.* (citing *Nat'l. Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex. 1995)). In determining the intention of the parties, we look only within the four corners of the insurance agreement to see what is actually stated, and not at what was allegedly meant. *See Esquivel v. Murray Guard, Inc.,* 992 S.W.2d 536, 544 (Tex.App.—Houston [14th Dist.] 1999, pet. denied). "We must consider all of the provisions with reference to the entire contract; no single provision will be controlling." *Cook Composites, Inc. v. Westlake Styrene Corp.,* 15 S.W.3d 124, 132 (Tex. App.—Houston [14th Dist.] 2000, pet. dism'd) (citing *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983); *Esquivel,* 992 S.W.2d at 543). "If a written contract is so worded that it can be given a definite or certain legal meaning," i.e., unambiguous, then we may not accept parol evidence as to the parties' intent. *Kelley–Coppedge,* 980 S.W.2d at 464 (citing *CBI Indus.,* 907 S.W.2d at 520). If there is no ambiguity in the policy, we must give "the words of the policy their generally accepted meaning unless the policy shows that the words

were meant in a technical or different sense." *W. Indem. Ins. Co. v. Am. Physicians Ins. Exch.,* 950 S.W.2d 185, 188 (Tex. App.—Austin 1997, no writ) (citing *Sec. Mut. Cas. Co. v. Johnson,* 584 S.W.2d 703, 704 (Tex.1979); *Guardian Life Ins. Co. v. Scott,* 405 S.W.2d 64, 65 (Tex.1966)). Notably, neither party claims the language of the policy at issue in this case is ambiguous, nor do we find it ambiguous. Therefore, we determine the meaning of the insurance policy without reference to parol or other extrinsic evidence.

 Trinity and several *amici* [6] urge this court to adopt the view set forth by the Texas Department of Insurance in a recent bulletin.[7] In making this argument, each implies or asserts that Texas courts are to give deference to an enforcing agency's interpretation of a statute or policy. However, the cases cited to support their contention almost all pertain to statutory construction and not contract construction. *See, e.g., Quick v. City of Austin,* 7 S.W.3d 109, 123 (Tex.1998) (considering an agency's intent in interpreting a statute); *State v. Pub. Util. Comm'n,* 883 S.W.2d 190, 196 (Tex.1994) (considering an agency's intent in interpreting a statute); *Dodd v. Meno,* 870 S.W.2d 4, 7 (Tex.1994) (considering an agency's intent in interpreting a statute); *Berry v. State Farm Mut. Auto. Ins. Co.,* 9 S.W.3d 884, 890 (Tex.App.—Austin 2000, no pet.) (considering an agency's intent in interpreting a statute); *City of Plano v. Pub. Util. Comm'n,* 953 S.W.2d 416, 421 (Tex.App.—Austin 1997, no writ) (considering an agency's intent in interpreting a statute). These cases provide that, where a statute is at issue, courts are to give deference to an enforcing agency's interpretation of the statute. By contrast, however, insurance policies are governed by rules of contract construction which ex-

---

**6.** Texas Farmers Insurance Company, Mid Century Insurance Company of Texas & Farmers Texas County Mutual Insurance Company, State Farm Mutual Automobile Insurance Company ("State Farm") and United Services Automobile Association ("USAA").

**7.** In that bulletin, the Texas Department of Insurance states that its intent in promulgating the standard personal auto policy form was not to require payment for inherent diminished value.

pressly limit a court's review of an unambiguous contract to the contract itself. *See Cook*, 15 S.W.3d at 132; *Esquivel*, 992 S.W.2d at 544; *Kelley–Coppedge*, 980 S.W.2d at 464; *CBI Indus.*, 907 S.W.2d at 520. Thus, while the tenets of statutory construction allow a court to consider extrinsic evidence when interpreting an unambiguous statute, this rule does not apply to contract construction.

▆▆▆▆ The few cases cited by Trinity and the *amici* that mention the interpretation of an insurance policy in the context of giving deference to the Texas Department of Insurance's interpretation are distinguishable from the situation presented by the record now before us. One *amici* (State Farm) asserts "[t]he Texas Supreme Court has recognized that promulgated policy forms should be interpreted according to the 'intent' of the Insurance Commissioner," citing *United States Ins. Co. of Waco v. Boyer*, 153 Tex. 415, 269 S.W.2d 340 (1954). In *Boyer*, the Texas Supreme Court acknowledged that, as a practical matter, the actual intent involved in choosing the words of the policy is that of the Insurance Commission.[8] 269 S.W.2d at 341. However, the *Boyer* court construed the policy by determining the meaning of the words to the general public and then by examining the choice the policyholder had and the choice he made. *See id.* No further mention was made of the Insurance Commission's intent, including what that intent might be. Of course, where the words of the policy are ambiguous, we look to the intent of the Texas Department of Insurance in determining the meaning of the policy terms. *See, e.g., Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex.1998) (considering an agency's intent in interpreting an ambiguous policy). However, because the policy language at issue here is not ambiguous, the rules of contract construction express-

ly prohibit us from considering parol or other extrinsic evidence of the parties' intent. Thus, our review and determination of the meaning of the policy is necessarily limited to the terms of the policy itself.

### B. Operative Policy Provisions

Carlton, as the insured, asserted a first party claim under his Texas Standard Personal Auto Policy. A first party claim sounds in contract and thus is determined by the terms of the insurance agreement between the insurer and the insured. The insuring agreement states in "Part D— Coverage for Damage to Your Auto":

> We will pay for direct and accidental loss to your covered auto, including its equipment less any applicable deductible shown in the Declarations.

It provides further that Trinity may discharge its liability under the policy by paying for the loss in money or by repairing or replacing damaged or stolen property. Trinity's obligations under the policy, however, are subject to a contractual limitation of liability, also found in Part D. Under the heading "Limit of Liability," the insurance policy reads in pertinent part:

> Our limit of liability will be the lesser of the:
>
> 1. Actual cash value of the stolen or damaged property;
>
> 2. Amount necessary to repair or replace the property with other of like kind and quality; or
>
> 3. Amount stated in the Declarations of this policy.

After inspecting Carlton's automobile, Trinity elected the second option, i.e., to pay the "[a]mount necessary to repair or replace the property with other of like kind and quality."

▆▆▆ Trinity does not dispute that diminution in value is a "direct and accidental loss" under the coverage agreement;[9]

---

8. The Texas Insurance Commission was the predecessor to the Texas Department of Insurance.

9. Trinity made no assertion in its motion for summary judgment that diminished value is not a direct or accidental loss or that it does

rather, Trinity insists that its liability for the loss is expressly limited by contract to the amount necessary to "repair or replace the property with other of like kind and quality." Thus, the issue is not whether the insurance agreement is broad enough to cover the loss, but whether the limit of liability is broad enough to cap Trinity's obligation to pay it.

Trinity maintains, "if a vehicle is not repairable, it is a total loss," and if "a vehicle can be repaired, the insurer is responsible only for the cost of repair." In making this argument, Trinity and the *amici* urge this court to define "repair or replace" to mean returning the vehicle to its original physical state. They contend that interpreting this phrase as encompassing "inherent diminished value" would go beyond the plain meaning of the words in the policy. Carlton, on the other hand, argues that "repair or replace" should be defined broadly to encompass any change in the value of the vehicle before and after the loss. Thus, we must determine whether the "repair or replace" clause in the auto insurance policy permits the insurer to pay only the cost of physical repair when the otherwise covered loss would be greater.

Although the words "repair or replace" are not defined in the insuring agreement, Texas courts have long held that, in an auto insurance policy, these words mean "the restoration of the automobile to substantially the same condition in which it was immediately prior" to the loss; the vehicle "would not be restored to the same condition if the repairs left the market value of the automobile substantially less than the value immediately" before the loss. *See Northwestern Nat'l Ins. Co. v. Cope*, 448 S.W.2d 717, 719 (Tex.Civ.App.—Corpus Christi 1969, no writ);[10] *Fid. & Cas. Co. of N.Y. v. Underwood*, 791 S.W.2d 635, 643 (Tex.App.—Dallas 1990, no writ); *Queen Ins. Co. v. Dominguez*, 426 S.W.2d 286, 289 (Tex.Civ.App.—San Antonio 1968), *rev'd on other grounds, Superior Pontiac Co. v. Queen Ins. Co. of Am.*, 434 S.W.2d 340 (Tex.1968); *see also Great Tex. County Mut. Ins. Co. v. Lewis*, 979 S.W.2d 72, 74 (Tex.App.—Austin 1998, no pet.) (finding the words "repair or replace" mean restoring to a condition substantially the same as that existing before the damage). In many of the cases where courts have awarded diminution in value, the damage giving rise to the diminished market value *could be* repaired.[11] Here, Carlton seeks to recover for a diminution in the value of his automobile resulting from damages that, in common understanding and parlance, are not subject to "repair" (e.g., additional mileage and the marketplace perception that a fully repaired vehicle is inferior to its never-damaged counterpart), but which nonetheless may adversely impact the vehicle's market value. While several of our sister courts of appeals have addressed the insurer's obligation under the "repair or replace" clause, very few of them appear to have addressed the particular issue now before

not fall within the coverage afforded under Part D of the insuring agreement.

10. *Cope* cites cases from several courts of appeals in this state to support this statement. *E.g., Calvert Fire Ins. Co. v. McClintic*, 267 S.W.2d 568 (Tex.Civ.App.—Waco 1954, writ ref.'d n.r.e.); *American Standard County Mut. Ins. Co. v. Barbee*, 262 S.W.2d 122 (Tex.Civ. App.—Fort Worth 1953, no writ); *Stuyvesant Ins. Co. v. Driskill*, 244 S.W.2d 291(Tex.Civ.App.—Fort Worth 1951, no writ); *Smith v. Am. Fire & Cas. Co.*, 242 S.W.2d 448 (Tex.Civ.App.—Beaumont 1951, no writ); *Mut. Fire & Auto. Ins. Co. v. Muckelroy*, 236 S.W.2d 555 (Tex.Civ.App.—San Antonio 1951,

no writ); *Roberdeau v. Indem. Ins. Co. of N. Amer.*, 231 S.W.2d 948 (Tex.Civ.App.—Austin 1950, writ ref.'d n.r.e.); *Am. Indem. Co. v. Jamison*, 62 S.W.2d 197 (Tex.Civ.App.—Texarkana 1933, no writ); *Standard Accident Ins. Co. of Detroit v. Richmond*, 297 S.W. 879 (Tex.Civ.App.—Texarkana 1927, writ dism'd).

11. For example, in *Barbee*, 262 S.W.2d at 123–24, over twenty items on the insured's car were either unrepaired or improperly repaired. Similarly, in *Roberdeau*, 231 S.W.2d at 951, the court noted that further repair could restore the insured's vehicle to the same, or as good, condition as before.

us, i.e., whether an insurer electing to "repair or replace" is obligated to pay not only the cost of repair or replacement but also the difference in value before the loss and after full and adequate repair.[12] In other words, must the insurer pay for damage which is not repairable but which nonetheless results in a diminution in value of the insured automobile?

Only a few Texas cases discuss post-repair reduction in value where the adequacy of the repairs is not in issue. In *Higgins v. Standard Lloyds*, 149 S.W.2d 143 (Tex.Civ.App.—Galveston 1941, writ dism'd), decided almost sixty years ago, the court addressed whether the insured's repaired vehicle was in better condition and value than before the accident. Although the court in *Higgins* did not address whether the insured was entitled to diminished value, the court stated, in obiter dictum, that, under certain circumstances, post-repair reduction in value could be recovered. *Id.* at 147.[13] Nearly a decade later, in *Roberdeau v. Indemnity Insurance Co. of North America*, 231

S.W.2d 948, 951 (Tex.Civ.App.—Austin 1950, writ ref'd n.r.e.), the Austin Court of Appeals rejected the *Higgins* rationale, stating:

> We do not agree with appellant that the measure of his damage here is the difference in the reasonable cash market value of the automobile immediately before and after the collision, since the contract of insurance does not so provide. In support of this theory of his measure of damage appellant testified that because the automobile was damaged in the collision it could not be restored to its former condition, and after repairs its value would still be that of a wrecked automobile. We are not impressed with this view because: (1) it is an issue of fact as to whether or not the repairs do or do not restore the automobile to its former condition, and (2) to apply such measure of damage would be arbitrarily reading out of the policy the right to make repairs and replacements.

*Id.* at 951.[14] Recently, the Austin Court of Appeals examined the identical limit of

---

12. Many of the cases address how to remedy inadequate or defective repairs. *See, e.g., Barbee*, 262 S.W.2d at 123–24 (finding more than twenty items on the insured's vehicle were repaired improperly or not repaired at all; the court concluded the repairs did not restore the car to its former condition and value); *Roberdeau*, 231 S.W.2d at 951–52 (finding some repairs made but additional repairs could have restored vehicle to the same or as good condition); *see also Cope*, 448 S.W.2d at 718 (finding no repairs were made due to parties' disagreement over the correct measure of damages). Other cases address the consequences of an insurer's inappropriate decision to repair rather than declare the vehicle a total loss. *See, e.g., Fid. & Cas. Co. of N.Y. v. Underwood*, 791 S.W.2d 635, 643–45, 647 (Tex.App.—Dallas 1990, no writ) (finding insured's truck was incapable of being repaired because it was flood damaged); *Cope*, 448 S.W.2d at 718–719 (holding that if the insurer cannot return the vehicle to substantially the same condition, then the actual cash value is the appropriate measure, where insured sued for damages caused by insurer's inappropriate election to repair, and the value after repairs was almost sixty percent less than its pre-loss value).

13. Although the court in *Higgins* was deciding coverage under the insurance policy, it did not engage in an analysis of the contract language but instead recited the tort measure of damages to personal property, i.e. "[t]he difference between its reasonable market value at the time and place of its injury immediately before its injury and its value immediately after the injury." 149 S.W.2d at 147. In stating that post-repair reduction in value could be recovered, the *Higgins* court cited cases involving tort, not contractual, measures of recovery. *Id.*

14. In the *Roberdeau* case, the insurer paid for $575 of repairs to the insured's station wagon after it was damaged in a collision. *See* 231 S.W.2d at 949. The insurer then offered to pay $475 (the amount of repairs minus the $100 deductible). *See id.* The policy stated that the insurer's limit of liability would not exceed the vehicle's actual cash value nor the cost to repair or replace the vehicle with another of like kind and quality. As here, the policy also gave the insurer the option of paying for the loss in money or paying for repair or replacement. *See id.* at 950. The insured refused the offer and sued the insurer for the difference between the vehicle's actual cash value before and after the accident,

liability provision now before us in a case involving the closely-related question of whether an insurer may take a deduction for "betterment," when electing to repair an automobile. *See Lewis,* 979 S.W.2d at 73. In construing the meaning of the phrase "of like kind and quality," the *Lewis* court rejected the insurer's effort to pay less than the cost of repair on the basis that the repairs increased or "bettered" the value of the automobile. *Id.* at 74.

Carlton points to a number of cases from other jurisdictions which address auto insurance policies containing similar limitations on liability, to support the notion that an insurer is liable for any change in market value of an insured's property after a loss.[15] Many of these

claiming that the repairs did not restore his car to its pre-accident condition and value. *See id.* After a bench trial, the court entered judgment for the insured for $475—the amount spent on repairs, less the deductible. *See id.* The trial court expressly found, however, that these repairs did not restore the vehicle to its pre-accident condition, and that it was possible to restore it to its pre-accident condition through additional repairs. *See id.* The Austin Court of Appeals reversed and remanded for further development of the facts on damages. *See id.* at 951. In doing so, the court noted that the insurer did not discharge its repair obligations because it had failed to repair the car to its pre-accident condition; accordingly, the cost of the inadequate repairs was not the proper measure of recovery. *See id.* Remand was necessary because of the absence of a finding concerning the cost to properly repair the vehicle to its pre-accident condition. *See id.* The appellate court disregarded the trial court's findings regarding post-accident and post-repair reduction in the actual cash value of the car. *See id.*

15. *See Delledonne v. State Farm Mut. Auto. Ins. Co.,* 621 A.2d 350, 353 (Del.Super.Ct.1992) (holding in a case of first impression that "an insurer's provision to 'repair or replace' a vehicle or its parts with 'like kind and quality' requires that the insurer pay for diminution in value."); *Senter v. Tenn. Farmers Mut. Ins. Co.,* 702 S.W.2d 175, 178 (Tenn. Ct.App.1985) ("Each of three factors—function, appearance, and value—must be substantially restored. If the repairs restore function and appearance but not fair market value, then the insured is entitled to recovery. We believe the measure of recovery should be the difference in the fair market value of the property immediately before the accident and immediately after the accident assuming all repairs had been completed."); *MFA Ins. Co. v. Citizens Nat'l Bank of Hope,* 260 Ark. 849, 545 S.W.2d 70, 71–72 (1977) (holding that if repairs to a fire-damaged vehicle with parts of like kind and quality would not restore the vehicle to its former market value, the proper measure of damages was the difference in market value before and after the loss); *Venable v. Import Volkswagen, Inc.,* 214 Kan. 43,

519 P.2d 667, 673 (1974) ("When an insurer makes an election to repair or rebuild under a 'repair, restore or replace clause' in its policy, the insurer is then obligated to put the vehicle in substantially the same condition as it was prior to the collision so as to render it as valuable and as serviceable as before."); *Dependable Ins. Co. v. Gibbs,* 218 Ga. 305, 127 S.E.2d 454, 461 (1962); *Eby v. Foremost Ins. Co.,* 141 Mont. 62, 374 P.2d 857, 858 (1962) (following *Rossier v. Union Automobile Ins. Co.,* 134 Or. 211, 291 P. 498 (1930) ); *Campbell v. Calvert Fire. Ins. Co.,* 234 S.C. 583, 109 S.E.2d 572, 577 (1959) (holding there cannot be "a complete restoration of the property unless it can be said that there has been no diminution of value after repair of the car," and adding that "the appropriate and fair measure of damages could be achieved by awarding either the difference between the fair cash value of the car before and after the collision, or similarly, the cost of repairs plus any diminution in value.") (footnote omitted); *Nat'l Farmers Union Prop. and Cas. Co. v. Watson,* 298 P.2d 762, 767 (Okla.1956) (holding that unless the collision resulted in a total loss, the measure of recovery is the difference between the fair market value of the vehicle in the condition in which it was immediately prior to the collision, and its value thereafter); *Barton v. Farmers Ins. Exch.,* 255 S.W.2d 451, 456 (Mo.App.1953) (holding the measure of damages is "the difference between the value of the automobile prior to the upset and its value when prepared and presented to the plaintiff for acceptance."); *Potomac Ins. Co. v. Wilkinson,* 213 Miss. 520, 57 So.2d 158, 160 (1952) (holding that if, despite repairs, there remains "a loss in actual market value, estimated as of the collision date, such deficiency is to be added to the cost of repairs."); *Dunmire Motor Co. v. Or. Mut. Fire Ins. Co.,* 166 Or. 690, 114 P.2d 1005, 1009 (1941) (stating "it cannot be said that there has been a complete restoration of the property unless it can be said that there has been no diminution of value after repair of the car."); *Ciresi v. Globe & Rutgers Fire Ins. Co.,* 187 Minn. 145, 244 N.W. 688, 690 (1932) (holding plaintiff entitled to "depreciation" after repairs; "in determining [the vehicle's] value at the

cases find that insurance companies are obligated to compensate for any diminution in value as a part of "repairing or replacing" damaged property of their insureds.[16] Not all jurisdictions, however, take this expansive view of the "repair or replace" language. Noting the absence of any policy language requiring the insurer to restore the insured vehicle to its pre-loss value or to pay the insured the difference in market value immediately before and after the loss, other jurisdictions have refused to embrace this interpretation and have declined to find the insurer liable for a diminution in value of the insured's vehicle after adequate repairs.[17]

Cases from other jurisdictions are informative but not controlling on this court. In deciding this issue, we do not consider what measure of recovery would make the insured whole after a loss or what would be fair and reasonable compensation for the loss he sustained, for we are not deciding a tort claim.[18] Because the parties' rights and obligations are governed by the contract between them, we instead focus on the plain, unambiguous language of the insurance policy and the ordinary meaning of the words defining the parties' obligations. *See Puckett v. United States Fire Ins. Co.,* 678 S.W.2d 936, 938 (Tex.1984) (noting court should apply plain meaning of words in construing insurance policy where there is no ambiguity).

■ In common usage, "repair" means "to restore by replacing a part or putting together what is torn or broken"[19] or, stated slightly differently, "[t]o bring back to good or usable condition."[20] There is no concept of "value" in the ordinary meaning of the word. Ascribing to the words "repair or replace" an obligation to compensate the insured for things which, by their very nature, cannot be "repaired" or "replaced" would violate the most fundamental rules of contract construction. If there is a single guiding principle that governs our interpretation of the insuring agreement, it is to give effect to the parties' intent as expressed in the plain lan-

time of the theft, allowance must be made for depreciation then accrued."); *Edwards v. Md. Motorcar Ins. Co.,* 204 A.D. 174, 197 N.Y.S. 460, 461 (N.Y.App.Div.1922) ("We think diminution in value is damage embraced within the clause of the policy insuring plaintiff 'against direct loss or damage' by the perils of 'theft, robbery or pilferage.' This liability is not cut down by the subsequent 'additional condition' making defendant liable for actual cost of repairs or replacement.").

**16.** In at least some of these cases, however, courts found the policy language ambiguous and therefore applied the rules of construction requiring the court to construe the terms of the insurance policy against the insurer. *See, e.g., Delledonne,* 621 A.2d at 354; *Campbell,* 109 S.E.2d at 577. In others, courts applied rules of construction contrary to those followed in Texas and strictly construed the policy language against the insurer without first finding that the language was ambiguous. *See, e.g., Gibbs,* 127 S.E.2d at 461; *Corbett,* 134 S.E. at 338.

**17.** *See, e.g., Johnson v. State Farm Mut. Auto. Ins. Co.,* 157 Ariz. 1, 754 P.2d 330, 331 (1988) (holding that an insurer has no obligation to pay diminished value in addition to repairs); *Ray v. Farmers Ins. Exch.,* 200 Cal.App.3d 1411, 246 Cal.Rptr. 593 (1988) (holding insurer was not obligated to repair the damaged automobile to both its pre-accident condition and market value, concluding that permitting coverage of diminished value would render meaningless the insurer's clear policy right to repair rather than pay actual cash value); *Bickel v. Nationwide Mut. Ins. Co.,* 206 Va. 419, 143 S.E.2d 903, 906 (1965) (holding that to find the measure of damages as the difference in market value immediately before and after the collision "would be arbitrarily reading out of the policy the right of defendant to make repairs or replace the damaged part with materials of like kind and quality.").

**18.** *See Milby Auto Co. v. Kendrick,* 8 S.W.2d 743, 744 (Tex.Civ.App.—Galveston 1928, writ dism'd w.o.j.) (holding the measure of damages in a negligence action is the "reasonable[,] necessary cost of restoring the injured automobile to its condition prior to its injury, thereby giving it the same value it possessed immediately before its injury.").

**19.** Webster's Third New International Dictionary 1923 (1993).

**20.** Riverside Webster's II Dictionary 580 (rev. ed.1996).

guage of the written policy. *See Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex.1994). Therefore, we must conclude that the limit of liability provision means what it says.

We hold that where an insurer has fully, completely, and adequately "repaired or replaced the property with other of like kind and quality," any reduction in market value of the vehicle due to factors that are not subject to repair or replacement cannot be deemed a component part of the cost of repair or replacement. Under the "repair or replace" provision of the policy's limit of liability, the insurer's liability is capped at the cost of returning the damaged vehicle to substantially the same physical, operating, and mechanical condition as existed immediately before the loss. This obligation does not include liability for any inherent diminished value caused by conditions or defects that are not subject to repair or replacement, such as a stigma on resale resulting from "market psychology" that a vehicle that has been damaged and repaired is worth less than a similar one that has never been damaged. While the insured may well suffer this type of damage as a result of a direct or accidental loss, the plain language of the policy clearly and unambiguously limits the insurer's liability to "the amount necessary to repair or replace the property with other of like kind and quality." If the market value of the vehicle, after full, adequate, and complete repair or replacement, is diminished as a result of factors that are not subject to "repair" or "replacement," the insurer has no obligation to pay the diminution in value. No other reasonable interpretation can be given to the parties' express agreement that the insurer's liability is capped at the amount necessary to "repair or replace."

While Carlton argues that failure to find coverage for "inherent diminished value" would result in a "windfall for the insurer," this argument is not germane to the issue now before us. It is not the province of this court to promulgate the terms of the policy or to modify the coverage it provides; rather, the role of the court is to interpret the meaning of the insurance agreement and to construe it to follow the expressions in the written instrument. Therefore, we cannot rewrite the policy or revise its provisions to avert what the parties perceive to be unfavorable consequences that might flow from our interpretation and construction.

## VI. CONCLUSION

Trinity's liability for direct and accidental loss to Carlton's vehicle is capped at the "[a]mount necessary to repair or replace the property with other of like kind and quality." Therefore, Trinity is not liable, as a matter of law, for the "inherent diminished value" to Carlton's automobile. The trial court did not err in granting summary judgment in favor of Trinity or in denying Carlton's motion for partial summary judgment. Accordingly, we overrule Carlton's second and fifth issues.

Having determined that the trial court properly granted summary judgment for Trinity on the ground of that Trinity is not liable for "inherent diminished value," we do not reach the remainder of Carlton's appellate issues. *See Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex.1995) (holding where movant asserts several grounds in support of its summary judgment motion, and the trial court does not specify the grounds on which judgment was granted, the reviewing court can affirm the judgment if any of the grounds are meritorious).

The judgment of the trial court is affirmed.