**Brent BAILEY and Heather Bailey, Appellants,**

v.

**PROGRESSIVE COUNTY MUTUAL INSURANCE COMPANY,**
Appellee.

No. 05–01–00822–CV.

Court of Appeals of Texas,
Dallas.

June 7, 2002.

Heather Bailey, Haynes and Boone, L.L.P., Dallas, for appellants.

Reagan M. Brown, Fulbright & Jaworski, Houston, for appellee.

Before Justices JAMES, O'NEILL, and FRANCIS.

## OPINION

Opinion by Justice O'NEILL.

Appellants Brent and Heather Bailey appeal a summary judgment granted in favor of appellee Progressive County Mutual Insurance Company (Progressive). In three points of error, the Baileys generally contend the trial court erred in granting summary judgment in favor of Progressive. For the following reasons, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

In 1999, the Baileys purchased a new 2000 Lexus for $31,587. Progressive insured the Baileys' vehicle under a standard personal auto policy. Pursuant to the policy, Progressive agreed to "pay for direct and accidental loss" to the vehicle. The policy also contained the following limit of liability:

> Our limit of liability for loss will be the lesser of the:

1. Actual cash value of the stolen or damaged property;

2. Amount necessary to repair or replace the property with other of like kind or quality;

3. Amount stated in Declarations of this policy.

About two months after the Baileys purchased the vehicle, the vehicle was involved in a serious accident. Progressive, initially estimating the cost of repairs at $6,466.04, elected to repair the vehicle. However, Progressive significantly underestimated the cost of repairs, which ultimately surpassed $18,000. Despite the repairs, the market value of the vehicle after repairs was over $9,000 less than its market value before the accident. Progressive refused the Baileys' request for the diminution in value to the automobile. The Baileys subsequently sued Progressive asserting it failed to repair or replace their property with other of like kind and quality. The Baileys also alleged claims for DTPA and Insurance Code violations. Progressive filed a motion for summary judgment asserting that it complied with its obligations under the contract because (1) it paid the amount necessary to "repair or replace the property with other of like kind or quality" and (2) diminished value is not recoverable under the policy. The trial court granted Progressive's motion for summary judgment. This appeal followed.

■ The standard for reviewing a trial court's granting of summary judgment is well settled. A movant for summary judgment must establish there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). A defendant moving for summary judgment must either (1) disprove at least one essential element of the plaintiff's cause of action or (2) conclusively establish each element of an affirmative defense. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979).

■ Insurance policies are contracts and are subject to the same rules of construction applicable to all contracts. *Tex. Farmers Ins. Co. v. Murphy*, 996 S.W.2d 873, 879 (Tex.1999); *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 740 (Tex. 1998). Thus, our primary goal is to give effect to the intent of the parties as expressed in the agreement. *Balandran*, 972 S.W.2d at 741. If, after applying the rules of construction, a policy is subject to two or more reasonable interpretations, we must resolve the uncertainty by adopting the construction that most favors the insured. *Id.; Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex.1991). In particular, we must adopt the construction of a limitation on liability urged by the insured so long as the construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent. *See Nat'l Union*, 811 S.W.2d at 555.

■ Here, the Baileys contend Progressive breached the insurance policy because it failed to repair or replace their vehicle with other of "like kind and quality." Specifically, the Baileys assert the repairs performed did not restore their vehicle to its former condition because the value of the vehicle after repairs was significantly less than the value of the vehicle before the accident. In its motion for summary judgment, Progressive asserted that irrespective of the post-repair value of the vehicle, it complied with its obligation under the policy because it fully repaired all damages subject to repair and the Baileys were not complaining of the adequacy of those repairs. Progressive's argument is premised

on its contention that it was not required to restore the vehicle to any particular value.

Progressive's position is directly contrary to this Court's opinion in *Fidelity & Casualty Co. of New York v. A.H. Underwood*, 791 S.W.2d 635 (Tex.App.-Dallas 1990, no pet.). In *Fidelity*, the insurer elected to repair a flood-damaged vehicle, but the value of the vehicle after repairs was substantially less than the value of the vehicle before repairs. The policy language concerning the insurer's limitation of liability was nearly identical to the language at issue here. Specifically, the language concerning repairs stated the insurer would pay "what it would then cost to repair or replace such covered automobile or part thereof with other of like kind and quality...." We interpreted this language as requiring the insurer to restore a vehicle to "substantially the same value as that of the vehicle prior to the loss." *Fidelity*, 791 S.W.2d at 641; *see Auto. Underwriters of Am. v. Radford*, 293 S.W. 869 (Tex.Civ. App.-Dallas 1927), *aff'd*, 299 S.W. 852 (Tex. Com.App.1927). More recently, the Beaumont Court of Appeals relied on *Fidelity* and a long history of Texas cases to reach a similar result. *See Schaefer v. Am. Mfrs. Mut. Ins. Co.*, 65 S.W.3d 806 (Tex. App.-Beaumont 2002, no pet. h.); *see also Superior Pontiac Co. v. Queen Ins. Co. of Am.*, 434 S.W.2d 340, 342 (Tex.1968); *Northwestern Nat'l Ins. Co. v. Cope*, 448 S.W.2d 717, 719 (Tex.Civ.App.-Corpus Christi 1969, no writ); *Smith v. Am. Fire & Cas. Co.*, 242 S.W.2d 448, 453-54 (Tex. Civ.App.-Beaumont 1951, no writ). Therefore, in this case, Progressive was required to conclusively establish that it repaired the Baileys' vehicle to substantially the same value as it was prior to the loss.[1] In its motion for summary judgment, Progressive made no attempt to make the requisite showing. Consequently, we conclude the trial court erred in granting Progressive's motion for summary judgment on this ground.

In reaching our conclusion, we are aware the Houston Fourteenth Court of Appeals reached a different result in *Carlton v. Trinity Universal Insurance Co.*, 32 S.W.3d 454 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) and *Smither v. Progressive County Mutual Insurance Co.*, 76 S.W.3d 719 (Tex.App.-Houston [14th Dist.] 2002, no pet. h.). In *Carlton*, the court held "where an insurer has fully, completely, and adequately 'repaired or replaced [the vehicle] with other of like kind and quality,' any reduction in market value due to factors that are not subject to repair or replacement cannot be deemed a component part of the cost of repair or replacement." *Carlton*, 32 S.W.3d at 465. According to the *Carlton* court, a car could be "fully, completely, and adequately" repaired as long as all damage that could be repaired was repaired. The court acknowledged the concept of repair necessarily must mean repair to a former condition, but concluded that no concept of value was associated with that condition. *Id.* at 464. In *Smither*, the Fourteenth Court reaffirmed its construction of the policy language and opined that the construction urged by the insured (and the construction we reaffirm today) ignores the policy language. *See Smither*, 76 S.W.3d at 723-24.

Because the Fourteenth Court's conclusion conflicts with our prior opinion in *Fidelity* and the weight of Texas authority on the issue, we decline to follow it. *See Fidelity*, 791 S.W.2d at 643; *Schaefer*,

---

1. Whether a vehicle has been so repaired or restored is generally a fact issue. *See, e.g., Fidelity*, 791 S.W.2d at 641; *Roberdeau v.* *Indem. Ins. Co. of N. Am.*, 231 S.W.2d 948, 951 (Tex.Civ.App.-Austin 1950, writ ref'd n.r.e.).

65 S.W.3d at 809–10; *see also Superior Pontiac Co.*, 434 S.W.2d at 342; *Northwestern Nat'l Ins. Co.*, 448 S.W.2d at 719; *Smith*, 242 S.W.2d at 453–54. Further, contrary to the Fourteenth Court's suggestion, our interpretation of the policy does not ignore the policy language. The policy language requires the insurer to "repair or replace" the property with other of like "kind and quality" and thus to restore the vehicle to its former condition. Deciding a vehicle's former condition includes some reference to its value does not ignore the policy language, but rather gives effect to it as well as the reasonable expectation of car owners.[2]

Further, the Fourteenth Court purports to distinguish *Fidelity* and other prior Texas case law that is contrary to its conclusion based on whether the insured was challenging the "adequacy" of repairs. However, an insured who contends his vehicle was not repaired to substantially the same condition and value as it was prior to the loss is necessarily challenging the overall adequacy of repairs. That it might be impossible for such repairs to be made, and thus impossible for the insurer to restore the vehicle to its previous condition, should not relieve the insurer of its obligation under the policy.[3] Moreover, the "condition" to which an insurer is obligated to restore a vehicle should not depend on whether a plaintiff complains that some

repairs were performed improperly. In other words, contrary to the Fourteenth Court's suggestion, there is no reasonable contractual basis to conclude an insurer who performs defective repairs is subject to a different limit on liability than an insurer who has adequately repaired all damages subject to repair.

 We also reject Progressive's reliance on a Texas Department of Insurance (TDI) "bulletin" construing the policy language as suggested by Progressive. According to Progressive, we are bound by TDI's interpretation of the contract so long as it is reasonable. The "contemporaneous" construction of a "statute" by the administrative agency charged with its enforcement is entitled to great weight. *See State v. Pub. Util. Comm'n of Tex.*, 883 S.W.2d 190, 196 (Tex.1994). The only case Progressive cites for the proposition that TDI's "position" in a bulletin should be given deference when it concerns *contractual* language previously construed by the courts is dicta in *Carlton*, 32 S.W.3d at 460. While Progressive also cites *Balandran*, a review of that case shows it actually conflicts with Progressive's position. In *Balandran*, the Texas Supreme Court noted that TDI had issued a bulletin proposing an interpretation of an insurance policy favorable to the insured. Nevertheless, the supreme court relied solely on the rules of contract construction in interpret-

---

**2.** Our construction is also in line with the reasonable expectations of financial lenders. In addition to requiring borrowers to use their cars as collateral for car loans, lenders generally require borrowers to insure their cars so their loan will remain secured in the event a car is involved in an accident. The Fourteenth Court's construction would leave such lenders significantly under secured.

**3.** Further, according to the Fourteenth Court, cars that have suffered damages not subject to repair lose value based solely on "market psychology," not their physical condition, as though the market arbitrarily decides what

characteristics reduce a vehicle's market value. *See Carlton*, 32 S.W.3d at 465. However, the mere fact an insured cannot point to a specific defective repair does not lead to the inevitable conclusion the damage to the vehicle is not physical. To illustrate, all else being equal, a vehicle with 100,000 miles on it is not in the same physical condition as a vehicle with 100 miles on it. Otherwise, one would expect the two vehicles to have the same expected life span. The value of the two cars does not differ because of "market psychology," but rather mechanical reality.

ing the policy. *See Balandran,* 972 S.W.2d at 741. The court adopted TDI's construction, not because it was the construction of an administrative agency, but because that construction favored the insured. There is nothing in *Balandran* to suggest deference should be given to TDI on a contractual interpretation issue, where the sole objective is to determine the intent of the parties. To the contrary, to the extent the policy language in this case is subject to more than one reasonable interpretation, *Balandran* requires we adopt the construction favorable to the Baileys, not Progressive.

 Progressive also moved for summary judgment on the affirmative defense of collateral estoppel. Progressive relies on a summary judgment entered in its favor against one of its insureds in another case. According to Progressive, the insured in the prior case represented the Baileys' interests because the insured filed the suit as a class action and the Baileys were putative class members.

 Among other things, for collateral estoppel to apply to a subsequent suit, the parties involved in the first suit must be the same or in privity with the parties in the second suit. *See State Farm Lloyds v. Borum,* 53 S.W.3d 877, 886 (Tex.App.-Dallas 2001, pet. denied). Although Progressive acknowledges the Baileys were not parties in the first suit, it asserts they were in privity with the putative class representative because the putative class representative "purported" to represent the Baileys' interests. *See, e.g., id.* However, because the class was never certified, the putative class representative could not have represented the Baileys' interests, whether she unilaterally purported to do so or not. Therefore, Progressive was not entitled to summary judgment under the doctrine of collateral estoppel.

We reverse the trial court's judgment and remand for further proceedings consistent with this opinion.