25 A.3d 1206 (2011)
422 N.J. Super. 38
Axa and Eduardo KIEFFER, Plaintiffs-Appellants,
v.
HIGH POINT INSURANCE COMPANY, Defendant-Respondent.
Tamesha Brown, Plaintiff-Appellant,
v.
First Trenton Indemnity Company, Defendant-Respondent.
Sandra Kozusko, Plaintiff-Appellant,
v.
New Jersey Manufacturers Insurance Company, Defendant-Respondent.
No. A-2720-09T2.
Superior Court of New Jersey, Appellate Division.
Argued January 26, 2011.
Decided August 30, 2011.
*1207 Stephen T. Sullivan, Jr. argued the cause for appellants (Keefe, Bartels & Clark, and Mazie, Slater, Katz & Freeman, L.L.C., attorneys; Mr. Sullivan, John E. Keefe, Jr., Red Bank, and Eric D. Katz, Roseland, of counsel; Mr. Sullivan, Mr. Katz, and John D. Gagnon, on the brief).
Robert J. Del Tufo (Skadden, Arps, Slate, Meagher & Flom, L.L.P.) argued the cause for respondent High Point Insurance Company.
Stephen R. Katzman, Edison, argued the cause for respondent First Trenton Indemnity Company (Methfessel & Werbel, attorneys; Mr. Katzman, of counsel and on the brief).
Daniel J. Pomeroy argued the cause for respondent New Jersey Manufacturers Insurance Company (Mortenson and Pomeroy, and Lite, DePalma, Greenberg, L.L.C., attorneys; Mr. Pomeroy, Karen E. Heller, Springfield, and Bruce D. Greenberg, Newark, on the brief).
Before Judges CUFF, SAPP-PETERSON and FASCIALE.
The opinion of the court was delivered by SAPP-PETERSON, J.A.D.
These are consolidated appeals by plaintiffs, Axa and Eduardo Kieffer (Kieffer), Tamesha Brown (Brown), and Sandra Kozusko (Kozusko), individually and on behalf of others similarly situated (collectively referred to as "plaintiffs"),[1] appealing the dismissal of their complaints against defendants, High Point Insurance Company (High Point), First Trenton Indemnity Company (First Trenton), and New Jersey Manufacturers Insurance Company (NJM), (collectively referred to as "defendants"), for failure to state a claim upon which relief may be granted and the subsequent denial of their motion for reconsideration. We affirm substantially for the reasons expressed by Judge Daniel M. Waldman in his comprehensive and well-reasoned written opinions dated October 19, 2009 and January 25, 2010.
In their complaints, plaintiffs sought an order prohibiting defendants from refusing to pay claims for diminution in the value of their vehicles damaged as a result of vehicular mishaps; requiring defendants to notify their insureds of coverage for diminution-in-value claims and the appropriate procedures for processing such claims; and directing defendants, in the future, to honor and abide by their contractual obligations and New Jersey laws by paying diminution-in-value claims resulting from vehicular collisions or other accidental losses as presented by defendants' insureds.
Plaintiffs' complaints also sought compensatory damages on behalf of those plaintiffs who presented first-party claims for diminution in value arising out of vehicular collisions or other accidental losses within six years of the filing of the underlying complaints, whose claimed theory of recovery was based upon the absence of such coverage in their policies, and defendants' refusals to advise plaintiffs that they have a right to recover for the diminished value of their vehicles.
In granting defendants' motions, Judge Waldman found that the language of the *1208 insureds' respective policies clearly and unambiguously limited defendants' liability to repairing damaged vehicles with "like kind or parts" or compensating insureds for the "actual value of the vehicle before the loss occurred (less depreciation and deductible) at the option of the insurer." Additionally, the judge concluded that diminution-in-value claims were clearly excluded under the policies and that the reasonable expectation of the insureds, after reading the limits of liability clauses and diminution-in-value exclusions in their policies, would be that their damaged vehicles "would be restored to [their] pre-loss value, less any `perceived loss in market or resale value.'"
Judge Waldman also rejected plaintiffs' arguments that diminution-in-value exclusions in policies were unconscionable and he found no merit to plaintiffs' contention that defendants breached the implied covenant of good faith and fair dealing. Likewise, the judge concluded that given his finding that defendants did not breach their contractual obligations to plaintiffs, the complaints failed to assert viable claims under the Consumer Fraud Act, N.J.S.A. 56:8-1 to -20, or state a claim for relief based upon reformation.
Plaintiffs moved for reconsideration and included in their motion a request that the court grant plaintiffs leave to file amended complaints asserting claims for diminution-in-value damages in the context of uninsured and underinsured motorist coverage. The court denied reconsideration, finding that the motion did not satisfy the requirements for reconsideration. The court also denied plaintiffs leave to amend their complaints, concluding their motions were not only untimely, but that reconsideration was not an appropriate procedure for seeking such relief.
On appeal, plaintiffs raise the following points for our consideration:
POINT I
THE LANGUAGE OF THE POLICIES IS AMBIGUOUS AND THUS MUST BE INTERPRETED AS AFFORDING COVERAGE FOR DIMINUTION IN VALUE.
A. INSURANCE POLICIES ARE CONTRACTS OF ADHESION WHICH MUST BE BROADLY INTERPRETED IN FAVOR OF THE INSURED.
B. DIMINUTION IN VALUE IS A RECOGNIZED MEASURE OF DAMAGES.
C. DEFENDANTS' POLICIES FAIL TO UNAMBIGUOUSLY EXCLUDE COVERAGE FOR DIMINUTION IN VALUE.
POINT II
THE DOCTRINE OF REASONABLE EXPECTATIONS REQUIRES THAT COVERAGE BE AFFORDED FOR DIMINUTION IN VALUE.
POINT III
THE DIMINUTION[-]IN[-]VALUE EXCLUSION CLAUSES ARE UNCONSCIONABLE AND UNENFORCEABLE UNDER RUDBAR[T].[[2]]
A. THE SUBJECT MATTER OF THE CONTRACT.
B. THE RELATIVE BARGAINING POWER OF THE PARTIES.
C. THE DEGREE OF ECONOMIC COMPULSION.
D. CONSIDERATIONS OF PUBLIC POLICY.
POINT IV

*1209 DIMINUTION[-IN-]VALUE EXCLUSIONS VIOLATE LONGSTANDING DECISIONAL LAW AND PUBLIC POLICY OF THIS STATE AND ARE THEREFORE UNENFORCEABLE.
POINT V
THE TRIAL COURT ERRED IN DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION.
POINT VI
THE TRIAL COURT ERRED IN DENYING PLAINTIFFS LEAVE TO AMEND THEIR COMPLAINT[S].

I.
A motion to dismiss under Rule 4:6-2(e) should be "approach[ed] with great caution" and should only be granted in "the rarest of instances." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 771-72, 563 A.2d 31 (1989). We view the allegations in the complaint with liberality and without concern for a plaintiff's ability to prove the facts alleged in the complaint. Id. at 746, 563 A.2d 31. We evaluate such a motion "in light of the legal sufficiency of the facts alleged in the complaint." Donato v. Moldow, 374 N.J.Super. 475, 482, 865 A.2d 711 (App. Div.2005). A plaintiff's obligation on a motion to dismiss "is not to prove the case but only to make allegations which, if proven, would constitute a valid cause of action." Leon v. Rite Aid Corp., 340 N.J.Super. 462, 472, 774 A.2d 674 (App.Div.2001). Where, however, "even a generous reading of the allegations does not reveal a legal basis for recovery[,]" the motion should be granted. Edwards v. Prudential Prop. & Cas. Co., 357 N.J.Super. 196, 202, 814 A.2d 1115 (App.Div.), certif. denied, 176 N.J. 278, 822 A.2d 608 (2003).
Here, each of the policies at issue contains provisions that expressly: (1) set forth the conditions under which payment would be made for accidental loss of or damage to the insured's vehicle; (2) limits the insurer's liability; and (3) excludes diminution in value as a covered claim.
Under the terms of the NJM policy, it agrees to pay "for direct and accidental loss to [its insured's] covered auto or any non-owned auto ... minus any applicable deductible shown in the Declarations." NJM also agrees to "pay for loss to [its insured's] covered auto caused by ... [c]ollision only if the Declarations indicate that Collision Coverage is provided for that auto." (Emphasis omitted). It limits its liability for any loss to "the lesser of the: 1. Actual cash value of the stolen or damaged property; or 2. Amount necessary to repair or replace the property with other property of like kind and quality." The policy specifically excludes coverage for "[l]oss to your covered auto or any non-owned auto due to diminution in value." (Emphasis omitted). The policy defines "diminution in value" as "the actual or perceived loss in market or resale value which results from a direct and accidental loss."
The First Trenton policy provides: "We will pay for loss to an insured car caused by collision with another object or vehicle, or by upset. We will pay for such loss minus the applicable deductible amount shown on the declarations pages." (Emphasis omitted). It limits its liability for losses to an insured's vehicle or any of its parts, to the "actual cash value of either the vehicle or the parts at the time the loss occur[s]. This limit will also not exceed what it would then cost to repair or replace either the vehicle or the parts with others of like kind and quality." (Emphasis omitted). Exclusions under the policy include an amendatory endorsement expressly providing that the insurance policy "does not cover loss to your car or any non-owned car due to diminution in value." *1210 (Emphasis omitted). The endorsement defines "diminution in value" as "the actual or perceived loss in market or resale value which results from a direct and accidental loss."
The High Point policy provides coverage "for accidental loss of or damage" to an insured's vehicle, "including its equipment, if it is involved in a collision with another object ... except as shown under `Losses We Will Not Pay For (Part 1).'" It limits its liability as follows:
We may pay for the loss, or repair or replace the damaged or stolen property....
Under this part, the maximum amount we are responsible to you for is the actual cash value of the damaged or stolen property at the time of the loss (taking into account the fact that it may no longer be new) minus the amount of the deductibles shown on the Declarations for these coverages....
If at our option, we pay for the cost to repair or replace the property or part, our liability does not include any diminution of value, however measured, as a result of the loss, and/or repair or replacement.

[(Emphasis added).]
Finally, it specifically excludes from coverage payment "for any loss to your automobile or any non-owned automobile due to diminution [in] value as defined in this policy." It defines the term "diminution [in] value" as "[t]he actual or perceived loss in market or resale value which results from a loss."
We discern no ambiguity in the language contained in any of the three policies. Where there is no ambiguity in the terms of an insurance policy, it is not the function of the courts to "`write for the insured a better policy of insurance than the one purchased.'" Gibson v. Callaghan, 158 N.J. 662, 670, 730 A.2d 1278 (1999) (quoting Longobardi v. Chubb Ins. Co., 121 N.J. 530, 537, 582 A.2d 1257 (1990)).
Nor are we persuaded, as plaintiffs urge, that the varying interpretations courts have ascribed to terms such as "repair," "replace," and "like kind and quality," constitute proof that such terms create an ambiguity in the language of the insurance policies sufficient to withstand dismissal of their complaints for failure to state a claim upon which relief may be granted. As the Texas Court of Appeals stated in Carlton v. Trinity Universal Insurance Co., 32 S.W.3d 454 (Tex.App. 2000):
In common usage, "repair" means "to restore by replacing a part or putting together what is torn or broken" or, stated slightly differently, "to bring back to good or usable condition." There is no concept of "value" in the ordinary meaning of the word. Ascribing to the words "repair or replace" an obligation to compensate the insured for things which, by their very nature, cannot be "repaired" or "replaced" would violate the most fundamental rules of contract construction. If there is a single guiding principle that governs our interpretation of the insuring agreement, it is to give effect to the parties' intent as expressed in the plain language of the written policy. Therefore, we must conclude that the limit of liability provision means what it says.
We hold that where an insurer has fully, completely, and adequately "repaired or replaced the property with other of like kind and quality," any reduction in market value of the vehicle due to factors that are not subject to repair or replacement cannot be deemed a component part of the cost of repair or replacement. Under the "repair or replace" provision of the policy's limit of *1211 liability, the insurer's liability is capped at the cost of returning the damaged vehicle to substantially the same physical, operating, and mechanical condition as existed immediately before the loss. This obligation does not include liability for any inherent diminished value caused by conditions or defects that are not subject to repair or replacement, such as a stigma on resale resulting from "market psychology" that a vehicle that has been damaged and repaired is worth less than a similar one that has never been damaged. While the insured may well suffer this type of damage as a result of a direct or accidental loss, the plain language of the policy clearly and unambiguously limits the insurer's liability to "the amount necessary to repair or replace the property with other of like kind and quality." If the market value of the vehicle, after full, adequate, and complete repair or replacement, is diminished as a result of factors that are not subject to "repair" or "replacement," the insurer has no obligation to pay the diminution in value. No other reasonable interpretation can be given to the parties' express agreement that the insurer's liability is capped at the amount necessary to "repair or replace."
[Id. at 464-65 (citations and footnotes omitted).]
Moreover, we reject plaintiffs' contention that because the three policies here broadly define coverage afforded to their insureds, they are to be characterized as "all risk" policies. The specificity of the exclusion provisions in each of the policies militates against any construction other than that claims based upon diminution in value are not covered. See Victory Peach Grp., Inc. v. Greater N.Y. Mut. Ins. Co., 310 N.J.Super. 82, 87-88, 707 A.2d 1383 (App.Div.1998).
Likewise, plaintiffs' reliance upon Hintz v. Roberts, 98 N.J.L. 768, 121 A. 711 (E. & A.1923), and Premier XXI Claims Management v. Rigstad, 381 N.J.Super. 281, 885 A.2d 521 (App.Div.2005), is misplaced. In both cases, the plaintiffs sought to recover damages for the diminution in value to their vehicles. However, the theory of recovery was based upon application of common law tort principles to a third-party action by the injured property owner against the tortfeasor rather than a first-party action by an insured against the insurer premised upon a breach of contract theory of liability. 98 N.J.L. at 770, 121 A. 711, 381 N.J.Super. at 282-83, 885 A.2d 521.
Pickett v. Lloyd's, 131 N.J. 457, 621 A.2d 445 (1993), upon which plaintiffs also rely to assert they are entitled to recover in tort against defendants for failure to pay their diminution-in-value claims, is also inapplicable. In Pickett, the Court recognized that a cause of action exists for an insurer's bad faith failure to pay an insurance claim, but that the cause of action arises out of the insurer's "breach of the fiduciary obligation imposed by virtue of its policy" and that compensation for such breach is not dependent upon "what label we place on the action." Id. at 470, 621 A.2d 445. Thus, Pickett does not represent a separate and distinct theory of recovery based upon a claim of diminution in value.

II.
Next, we reject plaintiffs' attempt to apply the principles we articulated in Homesite Insurance Co. v. Hindman, 413 N.J.Super. 41, 992 A.2d 804 (App.Div. 2010), to their claims. In Homesite, we stated that when considering conflicting provisions in an insurance policy, we "will not read one policy provision in isolation when doing so would render another provision *1212 meaningless." Id. at 47, 992 A.2d 804. The provisions at issue in Homesite were conflicting in that one provision provided coverage for the claimed loss while another provision excluded coverage for the very same loss. Ibid. Here, however, both the limits of liability provisions and the exclusion provisions serve to defeat coverage. In addition, assuming one may characterize the language limiting liability in the three policies as general and therefore ambiguous, the exclusion provisions are more specific and therefore controlling. Id. at 48, 992 A.2d 804 (citing Bauman v. Royal Indem. Co., 36 N.J. 12, 22, 174 A.2d 585 (1961)).

III.
Because the language in the respective policies is unambiguous, plaintiffs' contention that the doctrine of reasonable expectations requires that coverage be afforded is without merit. The clear language of the policies limiting liability and excluding diminution-in-value damages provides no basis for defendants' insureds to expect otherwise. Nor do the policies contain language on the declaration pages that would lead the reasonable insured to expect coverage for diminution-in-value damages. Consequently, the policies here are distinguishable from the policy at issue in Lehrhoff v. Aetna Casualty & Surety Co., 271 N.J.Super. 340, 346-47, 638 A.2d 889 (App.Div.1994).
In Lehrhoff, the insurer denied coverage to the plaintiff's son because although he was listed as a driver on the declarations page, he was allegedly no longer a resident in the plaintiff's household at the time of the accident. Id. at 342, 638 A.2d 889. We stated that the question to be answered was "whether the typical automobile policyholder would understand and expect from the declarations page of [the] policy that each of the listed drivers was entitled to all of the coverages and all of the protections afforded by the policy." Id. at 348, 638 A.2d 889. We answered the question in the affirmative based upon designation of the plaintiff's son as an additional driver on the declaration page. Id. at 348-49, 638 A.2d 889.

IV.
Plaintiffs, relying upon Rudbart v. North Jersey District Water Supply Commission, 127 N.J. 344, 355-56, 605 A.2d 681, cert. denied sub nom., 506 U.S. 871, 113 S.Ct. 203, 121 L.Ed.2d 145 (1992), contend that the diminution-in-value exclusions in defendants' policies are unenforceable because such provisions violate public policy. In support of this contention, plaintiffs argue that the contracts between plaintiffs and defendants are one-sided and vest defendants with supreme bargaining power over plaintiffs, who are economically compelled to acquire collision coverage. Additionally, plaintiffs urge that because their complaints allege the exclusions contained in the policies are unconscionable, a fact-sensitive analysis is required to resolve this contention. To that end, plaintiffs maintain the court erred in disposing of this issue through a motion to dismiss before evidence was presented. We disagree.
Where a complaint states no basis for relief and discovery will not serve to provide a basis for relief, then dismissal is the appropriate remedy. Banco Popular N. Am. v. Gandi, 184 N.J. 161, 166, 876 A.2d 253 (2005).
In Rudbart, the Court stated:
[I]n determining whether to enforce the terms of a contract of adhesion, courts have looked not only to the take-it-or-leave-it nature or the standardized form of the document but also to [(1)] the subject matter of the contract, [(2)] the *1213 parties' relative bargaining positions, [(3)] the degree of economic compulsion motivating the "adhering" party, and [(4)] the public interests affected by the contract.
[Rudbart, supra, 127 N.J. at 356, 605 A.2d 681.]
We agree the policies here are contracts of adhesion, but, as the Court observed in Rudbart, an acknowledgment that auto insurance policies are contracts of adhesion is "the beginning, not the end, of the inquiry[.]" Id. at 354, 605 A.2d 681. The question is whether enforcement of provisions excluding claims based upon diminution in value should be rendered unenforceable as a matter of policy. Ibid.
While public policy mandates that those who operate vehicles across this state must have liability insurance, collision insurance is not mandated. Universal Underwriters Grp. v. Heibel, 386 N.J.Super. 307, 319, 901 A.2d 398 (App. Div.2006). Therefore, provisions in a policy limiting the extent to which an insurer will compensate an insured for damages to an insured's vehicle and expressly excluding certain types of collision coverage do not contravene public policy. N.J. Coal. of Health Care Prof'ls, Inc. v. N.J. Dep't of Banking & Ins., Div. of Ins., 323 N.J.Super. 207, 254-57, 732 A.2d 1063 (App.Div.), certif. denied, 162 N.J. 485, 744 A.2d 1208 (1999). Policy exclusions are presumptively valid and will be enforced provided the provisions are "specific, plain, clear, prominent, and not contrary to public policy." Doto v. Russo, 140 N.J. 544, 559, 659 A.2d 1371 (1995); see also Allstate Ins. Co. v. Malec, 104 N.J. 1, 10, 514 A.2d 832 (1986) (stating principle that "a specific exclusion for intentional wrongful acts is valid and consistent with public policy.").
However, even in the absence of a statutory mandate to maintain collision insurance, most vehicle owners are economically compelled to maintain collision insurance, whether as a condition of a lease agreement or a financing agreement. N.J. Coal. of Health Care Prof'ls, Inc., supra, 323 N.J.Super. at 256, 732 A.2d 1063. Thus, no fact-sensitive inquiry into the first three Rudbart factors is required. Muhammad v. Cnty. Bank of Rehoboth Beach, 189 N.J. 1, 18, 912 A.2d 88 (2006) ("The first three factors of the Rudbart analysis require only brief attention."), cert. denied, 549 U.S. 1338, 127 S.Ct. 2032, 167 L.Ed.2d 763 (2007). The key question before the motion judge was what, if any, "public interests" are affected by the inclusion of these provisions in auto insurance policies. Id. at 19, 912 A.2d 88. As a consequence, there was no necessity to deny defendants' motion on the basis that it was not ripe for resolution without the benefit of the presentation of evidence.
As previously discussed, the cases upon which plaintiffs rely to urge that the policies are contrary to public policy involve third-party actions against a tortfeasor rather than a first-party action by an insured seeking enforcement of an insurance contract against an insurer. Plaintiffs fail to point to any statutory, regulatory, or judicial decision requiring inclusion of diminution in value as part of an insured's collision coverage. Citing Allen v. Commerical Casualty Insurance Co., 131 N.J.L. 475, 477-78, 37 A.2d 37 (E. & A.1944), plaintiffs properly note that public policy has been defined as "that principle of law which holds that `no person can lawfully do that which has a tendency to be injurious to the public or against public good[.]'" Ibid. They fail, however, to articulate what harm or injury to the "public" or "public good" results from a contractual provision which denies diminution-in-value coverage in an auto insurance policy. Moreover, plaintiffs are not left without a remedy for damages caused to their automobiles. *1214 See, e.g., Muhammad, supra, 189 N.J. at 19-21, 912 A.2d 88 (holding class action waiver provision in payday loan agreement was unconscionable and noting that in the absence of the class action vehicle, most consumers with small claims would be disinclined to individually pursue consumer fraud claims); see also Vasquez v. Glassboro Serv. Ass'n, 83 N.J. 86, 99, 105, 415 A.2d 1156 (1980) (recognizing that our courts and Legislature "have demonstrated a progressive attitude in providing legal protection for migrant farmworkers" and finding failure of employment contract to provide a migrant farm worker, upon termination from employment, with a reasonable opportunity to find shelter before dispossession, contrary to public policy).
Here, defendants agreed to compensate plaintiffs maintaining collision insurance coverage for damage resulting from vehicular mishaps with the repair or replacement of the damaged vehicle or actual cash value of the vehicle at the time of the accident, but expressly excluded diminution in value, a loss which affects no public interests. Therefore, Judge Waldman properly rejected plaintiffs' contention that the limitation and exclusion provisions contained in the respective policies are contrary to public policy.

V.
Plaintiffs' remaining arguments, including those related to the court's denial of their motions for reconsideration and amendment of their complaints, are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).
Affirmed.
NOTES
[1] The matter was not certified as a class action prior to dismissal of the complaint. R. 4:32-2.
[2] Rudbart v. N. Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 605 A.2d 681, cert. denied sub nom., 506 U.S. 871, 113 S.Ct. 203, 121 L.Ed.2d 145 (1992).