**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4206-15T3

MHA, LLC, d/b/a MEODOWLANDS
HOSPITAL MEDICAL CENTER,

    Plaintiff-Appellant,

v.

HEALTHFIRST, INC., HEALTHFIRST
HEALTH PLAN OF NEW JERSEY, INC.,
SENIOR HEALTH PARTNERS, INC.,
MANAGED HEALTH INC., HF MANAGED
SERVICES, LLC, and HEALTHFIRST
PHSP, INC.,

    Defendants-Respondents.

_____

Argued March 20, 2018 — Decided August 3, 2018

Before Judges Hoffman, Gilson and Mayer.

On appeal from Superior Court of New Jersey,
Law Division, Bergen County, Docket No. L-
6822-13.

David M. Estes argued the cause for appellant
(Mazie Slater Katz & Freeman, LLC, attorneys;
David M. Estes and Eric D. Katz, on the
briefs).

Scott B. Klugman argued the cause for
respondents (Levine Lee, LLP, and The Epstein
Law Firm, PA, attorneys; Scott B. Klugman and
Michael J. Epstein, on the brief).

PER CURIAM

In September 2013, plaintiff MHA, LLC d/b/a Meadowlands Hospital Medical Center (MHA), filed a complaint in the Law Division against defendant insurance companies[1] (collectively, HealthFirst or defendants) for reimbursement for medical services provided to their Medicare and Medicaid enrollees and subscribers. Plaintiff sought reimbursement of all outstanding claims at its published rates (in excess of the Medicare and Medicaid rates), as well as reimbursement for claims that were allegedly underpaid, denied, or not paid timely in accordance with the established rates imposed by the Medicare and Medicaid statutory regime.

After the matter was removed to federal court and remanded to state court following a Third Circuit appeal, defendants moved to dismiss plaintiff's complaint pursuant to Rule 4:6-2(e) for failure to state a claim upon which relief can be granted. The Law Division granted defendants' motion, dismissing plaintiff's complaint with prejudice, concluding: (a) plaintiff's Medicare-based claims fail as a matter of law because "[t]he Medicare regulations cap the rate that the non-participating provider may

_____

[1] Defendant HealthFirst, Inc. (HF Inc.), a New York corporation, issues and administers health care plans nationally through its wholly owned and controlled subsidiaries, including defendants HealthFirst Health Plan of New Jersey, Inc. (HFNJ), HealthFirst PHSP, Inc. (PHSP), Managed Health, Inc. (MHI), HF Management Services, LLC (HFMS), and Senior Health Partners, Inc. (SHP).

lawfully charge for any services at the original Medicare rate"; (b) the Medicare statute expressly preempts plaintiff's Medicare-based claims and common law causes of action; and (c) plaintiff's Medicaid-based claims fail because its complaint did not sufficiently allege exhaustion of all available administrative remedies.

After the court entered an amended confirming order on May 27, 2016, plaintiff filed this appeal. Before us, plaintiff argues the trial court erred when it addressed the issue of preemption prior to discovery and further erred when it dismissed plaintiff's complaint with prejudice for failing to plead exhaustion of administrative remedies or futility. We agree. For the reasons that follow, we vacate the order of dismissal and remand to the Law Division for further proceedings.

I.

Plaintiff, a privately held New Jersey limited liability company, purchased all of the assets of Meadowlands Hospital Medical Center (Meadowlands), a licensed general acute care hospital, in December 2010. HealthFirst provides health benefit plans and health insurance policies through its subsidiaries and related companies.

HFNJ, an authorized Health Management Organization (HMO), contracted with New Jersey to provide health insurance to New

Jersey Medicaid beneficiaries. HFNJ also contracted with the federal Center for Medicare and Medicaid Services (CMS) to provide eligible residents with Medicare, through Medicare Advantage contracts. HFNJ receives a capitation payment from CMS, and an additional premium from the recipient, who may receive certain benefits above those of regular Medicare, but must use the HMO's network of facilities and providers.

Plaintiff did not contract with any defendant, and therefore alleged it "was entitled to have its claims processed promptly according to state and federal statutes and regulatory law." Plaintiff electronically submitted its bills to defendants, alleging that from 2010 through 2013, it rendered emergency and other pre-authorized medical services to defendants' enrollees and subscribers, but that "defendants refused and neglected to properly process [its] claims for payment and induced [it] to sign contracts . . ., promising to promptly pay [it] for services rendered to . . . defendants' subscribers and enrollees."

According to plaintiff, it soon realized that the in-network payments it received from defendants "were, and are so grossly insufficient that the hospital cannot [] sustain itself and meet its continuing obligations to provide the community access to quality healthcare services, by continuing to provide medical services to the defendants[] without adequate payments."

Plaintiff also alleged that "[d]espite approvals for the listed procedures, . . . defendants failed to pay the usual, customary and reasonable charge billed by . . . plaintiff for services rendered on behalf of the defendants['] various enrollees and plan subscribers." According to plaintiff, from 2010 through 2013, it invoiced defendants for services "totaling $28,874,756.96," but defendants paid "just $2,541,445.60, leaving a balance now due of $26,333,311.36, together with lawful interest and other charges."

In October 2013, defendants removed the action to federal court on the basis of federal-question jurisdiction. In July 2014, defendants moved to dismiss the complaint for lack of personal jurisdiction and for failure to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6). Defendants also filed an alternative motion to strike the Medicare allegations in the complaint, based on plaintiff's representation in its motion to remand that the complaint did not relate to Medicare enrollees and subscribers.

Subsequently, plaintiff voluntarily dismissed four of the named defendants: HF Inc., SHP, MHI, and PHSP, and also voluntarily dismissed two of its claims: fraudulent/negligent misrepresentation and violation of the Unfair Claim Settlement Practices section of the Insurance Trade Practices Act, N.J.S.A.

17B:30-13. Additionally, plaintiff later conceded that the complaint did, in fact, relate to Medicare enrollees and subscribers, which rendered defendants' motion to strike moot. On August 26, 2014, plaintiff opposed the motion to dismiss and filed a cross-motion for leave to amend its complaint.

On February 27, 2015, the district court dismissed plaintiff's Medicaid-based claims because "neither the [c]omplaint nor the proposed amended complaint aver that [p]laintiff availed itself of — or exhausted all of [—] the statutorily available procedures for resolving the disputed claims." MHA, LLC v. HealthFirst, Inc., No. 2:13-cv-06036, 2015 WL 858051, at *4 (D.N.J. Feb. 27, 2015). It also dismissed plaintiff's Medicare-based claims, finding that the Medicare statute expressly preempted plaintiff's common law claims of unjust enrichment and quantum meruit, "because [p]laintiff's allegations are directly controlled by federal standards." Ibid.

Plaintiff appealed and the Third Circuit vacated, holding that the district court lacked subject matter jurisdiction and, therefore, vacated the dismissal of plaintiff's claims and remanded to the district court with instructions to remand the case to the state court. MHA, LLC v. HealthFirst, Inc., 629 F. App'x 409, 415 (3d Cir. 2015). The Third Circuit noted that "any statutory interpretation required by this case is incidental to

the application of Medicare and Medicaid law to disputed facts." Id. at 414. It further held, "The parties have not identified a dispute over the meaning of particular statutory text; rather, HealthFirst generally avers that the parties disagree over the application of the Medicare Act to their situation." Ibid.

On remand, plaintiff advised defendants it intended to proceed on its initially-filed complaint, notwithstanding that it had previously voluntarily dismissed several parties and claims in the federal court. Before any discovery, defendants filed a motion to dismiss the complaint pursuant to Rule 4:6-2(b), for lack of personal jurisdiction, and Rule 4:6-2(e), for failure to state a claim upon which relief can be granted.

On May 25, 2016, the Law Division granted defendants' motion and issued a written opinion and order dismissing plaintiff's complaint with prejudice.[2] However, the court qualified the with-prejudice dismissal,

> to the extent . . . [p]laintiff seeks to
> recover on the basis that [defendants] failed
> to pay or reimburse [its] claims in accordance
> with the Medicare statute and regulations,
> i.e., that [defendants] paid . . . [p]laintiff
> less than the statutory amount or failed to
> pay entirely, . . . plaintiff may bring a
> cause of action to seek reimbursement for such
> claims, . . . [by filing] a new complaint

---

[2] On May 27, 2016, the court issued an amended opinion and order "to correct a clerical error."

sufficiently alleging that certain disputed claims were not paid at the statutory rate.

This appeal followed.

## II.

Rule 4:6-2(e) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted . . . ." That rule tests "the legal sufficiency of the facts alleged on the face of the complaint." Printing Mart-Morristown v. Sharp Elec. Corp., 116 N.J. 739, 746 (1989) (citation omitted).

On a motion to dismiss, a plaintiff need not prove the case, but need only "make allegations which, if proven, would constitute a valid cause of action." Kieffer v. High Point Ins. Co., 422 N.J. Super. 38, 43 (App. Div. 2011) (quoting Leon v. Rite Aid Corp., 340 N.J. Super. 462, 472 (App. Div. 2001)). On such a motion, plaintiff is entitled to "every reasonable inference of fact." Printing Mart, 116 N.J. at 746 (citing Indep. Dairy Workers Union v. Milk Drivers & Dairy Emp. Local 680, 23 N.J. 85, 89 (1956)).

A reviewing court must search "the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Ibid. (quoting Di Cristofaro v. Laurel Grove Mem. Park, 43 N.J. Super. 244, 252

(App. Div. 1957)). This review should be "at once painstaking and undertaken with a generous and hospitable approach." Ibid.

A motion to dismiss "should only be granted in 'the rarest of instances.'" Kieffer, 422 N.J. Super. at 43 (quoting Printing Mart, 116 N.J. at 772). Only when "even a generous reading of the allegations does not reveal a legal basis for recovery" should the motion be granted. Ibid. (quoting Edwards v. Prudential Prop. & Cas. Co., 357 N.J. Super. 196, 202 (App. Div. 2003)).

A.

Plaintiff contends the motion court erred by dismissing its Medicaid-based claims for failing to adequately plead exhaustion of administrative remedies or futility. N.J.S.A. 26:2J-8.1(e)(1) to (4) establishes a two-step administrative process: (1) an internal appeal mechanism; and (2) non-appealable, binding arbitration. Plaintiff argues that even if it were required to exhaust both steps of the administrative process prior to filing suit, "the allegations in the complaint of exhaustion and futility of defendants' process are sufficient to defeat a pre-discovery motion to dismiss at the inception of a case."

Plaintiff further argues that even if exhaustion were required, various exceptions to the exhaustion doctrine apply to its claims that precluded dismissal of its complaint. Furthermore, it claims even if the allegations of exhaustion and futility were

lacking, "it was error to not give [it] an opportunity to amend its pleadings."

In dismissing plaintiff's Medicaid-based claims, the court found that plaintiff did "not adequately aver that it exhausted" the Health Claims Authorization, Processing and Payment Act (HCAPPA), N.J.S.A. 26:2J-1 to -47, "administrative remedies prior to commencing this lawsuit in the Law Division. Additionally, the [p]laintiff's [c]omplaint did not adequately aver that following such administrative remedies would be futile."

New Jersey is a notice pleading state, which means that only a short, concise statement of the claim need be given in the complaint. See Velop, Inc. v. Kaplan, 301 N.J. Super. 32, 56 (App. Div. 1997). A pleading must contain "a statement of facts on which a claim is based, showing that the pleader is entitled to relief, and a demand for judgment for [that] relief." R. 4:5-2. "Pleadings must fairly apprise the adverse party of the claims and issues to be raised at trial." See Spring Motors Distribs., Inc. v. Ford Motor Co., 191 N.J. Super. 22, 29 (App. Div. 1983), aff'd in part and rev'd in part on other grounds, 98 N.J. 555 (1985); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 4:5-2 (2018).

We hold that the court erred by dismissing the complaint for failure to plead exhaustion of administrative remedies or

futility. Plaintiff was not required to plead exhaustion of administrative remedies, or futility, because exhaustion is an affirmative defense and defendants bore the burden of pleading and proving it. The court erred by shifting the burden onto plaintiff instead of requiring defendants to demonstrate that plaintiff had not exhausted its administrative remedies. Paese v. Hartford Life & Accident Ins. Co, 449 F.3d 435, 446 (2d Cir. 2006); Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997).

We further note that, contrary to the position of defendants and the ruling of the motion court, plaintiff did make generalized allegations of exhaustion and futility in its complaint. Plaintiff alleged, among other things, that defendants employed "automated programs that 'pend' claims, i.e., puts them in a state of suspense before they are even processed, even though no additional information [was] needed or requested from the plaintiff." Thus, according to plaintiff, "it was impossible to appeal HealthFirst's adjudication of numerous claims, when defendants refused to acknowledge or process the claims from the outset."

Plaintiff also specifically claimed that it submitted documentation but that such documentation was "not accepted for the appeals." Also, defendants' practice of "unilaterally adjusting and underpaying . . . claims submitted by [plaintiff], without providing the requisite advance written notice of such

11 A-4206-15T3

attempts to seek reimbursement of any alleged overpayment of claims . . . has effectively denied [plaintiff] its statutory right of an internal appeal."

Thus, even if plaintiff was required to plead exhaustion or futility, its generalized allegations satisfied our liberal pleading standards. Printing Mart, 116 N.J. at 746, 771-72; Velop, 301 N.J. Super. at 56. At the very least, the court should have provided plaintiff the opportunity to amend its pleading. Printing Mart, 116 N.J. at 746.

Defendants argue that plaintiff's own admissions established that it deliberately abandoned the internal appeals process, and refutes any claim that the process was futile. However, in doing so, defendants referred to materials outside of the pleadings, which the court incorrectly considered on a motion to dismiss. Rieder v. State, 221 N.J. Super. 547, 552 (App. Div. 1987). Therefore, defendants' argument lacks persuasion.

Because plaintiff was not required to plead exhaustion of administrative remedies or futility, dismissal of its claims for failure to do so was not appropriate on defendants' motion to dismiss. We therefore vacate the dismissal of plaintiff's Medicaid-based claims and remand for further proceedings.

B.

Plaintiff further contends the motion court erred by holding

that the two-step administrative process set forth in N.J.S.A. 26:2J-8.1(e) is mandatory. Plaintiff argues the plain language of the statute dictates that the administrative remedies are elective rather than mandatory, and that a statute cannot be construed to eliminate an existing right unless it does so explicitly and clearly.

In granting defendants' motion to dismiss, the court held:

> The HCAPPA affords . . . [p]laintiff express administrative remedies under which it should resolve its claims disputes prior to commencing an action in the Law Division. The HCAPPA sets forth a two-step mechanism, which requires a complainant to complete the appeal process and participate in nonappealable, binding arbitration performed by an independent organization.

We hold the motion court erred when it held that the two-step administrative process set forth in N.J.S.A. 26:2J-8.1(e) is mandatory. Although the determination of whether it is or is not mandatory is neither necessary nor dispositive to this appeal, we address the issue to provide guidance to the Law Division on remand.

The HCAPPA governs the establishment and operation of health maintenance organizations and health care providers. N.J.S.A. 26:2J-8.1. It affords certain adjudicative or administrative procedures by which health maintenance organizations, such as plaintiff, should resolve claims for unpaid or improperly paid

13                                                    A-4206-15T3

claims. <u>Ibid.</u>  The relevant provisions of the HCAPPA provide:

(1) A health maintenance organization or its agent, hereinafter the payer, <u>shall</u> establish an internal appeal mechanism to resolve any dispute raised by a health care provider regardless of whether the health care provider is under contract with the payer regarding compliance with the requirements of this section or compliance with the requirements of [N.J.S.A. 17B:30-51 to -54] . . . .

A health care provider <u>may</u> initiate an appeal on or before the 90th calendar day following receipt by the health care provider of the payer's claims determination, which is the basis of the appeal, on a form prescribed by the Commissioner of Banking and Insurance which shall describe the type of substantiating documentation that must be submitted with the form.  The payer <u>shall</u> conduct a review of the appeal and notify the health care provider of its determination on or before the 30th calendar day following the receipt of the appeal form.  If the health care provider is not notified of the payer's determination of the appeal within 30 days, the health care provider <u>may</u> refer the dispute to arbitration as provided by paragraph (2) of this subsection.

If the payer issues a determination in favor of the health care provider, the payer <u>shall</u> comply with the provisions of this section and pay the amount of money in dispute, if applicable . . . .

. . . .

(2) Any dispute regarding the determination of an internal appeal conducted pursuant to paragraph (1) of this subsection <u>may</u> be referred to arbitration as provided in this paragraph. The Commissioner of Banking

14

and Insurance <u>shall</u> contract with a nationally recognized, independent organization that specializes in arbitration to conduct the arbitration proceedings.

Any party <u>may</u> initiate an arbitration proceeding on or before the 90th calendar day following the receipt of the determination which is the basis of the appeal, on a form prescribed by the Commissioner of Banking and Insurance . . . .

(3) The arbitrator <u>shall</u> conduct the arbitration proceedings pursuant to the rules of the arbitration entity, including rules of discovery subject to confidentiality requirements established by State or federal law.

. . . .

<u>The arbitration shall be nonappealable and binding on all parties to the dispute</u>.

[N.J.S.A. 26:2J-8.1(e)(1) to (4) (emphasis added).]

Plaintiff argues that the plain language of the statute dictates that the HCAPPA's administrative remedies are elective, rather than mandatory. We agree.

When interpreting a statute, the overriding goal must be to determine and effectuate the Legislature's intent. <u>Tlumac v. High Bridge Stone</u>, 187 N.J. 567, 573 (2006). Our analysis begins with an examination of the plain language of the statute, which provides the most reliable indicium of statutory intent. <u>L.W. ex rel. L.G. v. Toms River Reg'l Sch. Bd. of Educ.</u>, 189 N.J. 381, 400 (2007);

DiProspero v. Penn, 183 N.J. 477, 492 (2005) ("[T]he best indicator of [legislative] intent is the statutory language."). A reviewing court should "ascribe to the statutory words their ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole." Am. Fire & Cas. Co. v. N.J. Div. of Taxation, 189 N.J. 65, 79 (2006) (quoting DiProspero, 183 N.J. at 492).

If the language of the statute is clear, the reviewing court should interpret the statute consistent with its plain meaning. Lozano v. Frank DeLuca Constr., 178 N.J. 513, 522 (2004); Watt v. Mayor & Council of Franklin, 21 N.J. 274, 277 (1956). The judiciary does not sit as a "superlegislature," and it is not the function of the courts to evaluate the efficacy or wisdom of a particular legislative enactment. In re Am. Reliance Ins. Co., 251 N.J. Super. 541, 549 (App. Div. 1991).

We find the language of N.J.S.A. 26:2J-8.1(e) clear and unambiguous. It first provides that HMOs, or their agents, "shall" establish an internal appeal mechanism to resolve any dispute raised by a health care provider. N.J.S.A. 26:2J-8.1(e)(1). Thus, it is clear that the HMOs are required to establish that mechanism; however, the statute also provides that a health care provider "may initiate an appeal" of claims determinations, and any dispute regarding the determination of an internal appeal "may" be referred

16

to arbitration. N.J.S.A. 26:2J-8.1(e)(2). Nothing in the statute specifically states that parties are required to refer such disputes to arbitration.

Moreover, the statute specifically states that the arbitration "shall be nonappealable and binding on all parties to the dispute." N.J.S.A. 26:2J-8.1(e)(4). Such a nonappealable and binding arbitration would eliminate the parties' right to bring suit. Nothing in the statute suggests that it intended to eliminate or abrogate the parties' right to bring suit, and such an interpretation should not be read into the statute. See Oswin v. Shaw, 129 N.J. 290, 310 (1992) (citation omitted) ("No statute is to be construed as altering the common law, farther than its words import. It is not to be construed as making any innovation upon the common law which it does not fairly express."), superseded by statute N.J.S.A. 39:6A-8(a), as recognized in DiProspero, 183 N.J. at 481. However, because the statute is silent on that issue, and given the parties may choose to waive their right to a trial, the arbitration process in N.J.S.A. 26:2J-8.1(e) should be considered elective or permissive, rather than mandatory.

Still, New Jersey's exhaustion of administrative rules may apply as long as an administrative remedy is available, regardless whether an administrative remedy is permissive or mandatory. See, e.g., Abbott v. Burke, 100 N.J. 269, 296 (1985) (citation omitted)

("In general, available and appropriate 'administrative remedies should be fully explored before judicial action is sanctioned.'"); Garrow v. Elizabeth Gen. Hosp. & Dispensary, 79 N.J. 549, 558-59 (1979) ("Exhaustion of administrative remedies before resort to the courts is a firmly embedded judicial principle.").

However, "the preference for exhaustion of administrative remedies is one 'of convenience, not an indispensable pre-condition.'" Abbott, 100 N.J. at 297 (quoting Swede v. City of Clifton, 22 N.J. 303, 315 (1956)). "Thus, except in those cases where the legislature vests exclusive primary jurisdiction in an agency, a plaintiff may seek relief in our trial courts." Ibid. (citation omitted); see also Borough of Matawan v. Monmouth Cty. Bd. of Taxation, 51 N.J. 291, 296 (1968) (holding administrative exhaustion not an absolute jurisdictional requirement). "In any case amenable to administrative review, however, upon a defendant's timely petition, the trial court should consider whether exhaustion of remedies will serve the interests of justice." Abbott, 100 N.J. at 297.

In City of Atlantic City v. Laezza, 80 N.J. 255, 265 (1979), the New Jersey Supreme Court identified the interests that may be furthered by an exhaustion requirement:

> (1) the rule ensures that claims will be heard, as a preliminary matter, by a body possessing expertise in the area; (2)

administrative exhaustion allows the parties to create a factual record necessary for meaningful appellate review; and (3) the agency decision may satisfy the parties and thus obviate resort to the courts.

Nevertheless, in Garrow, 79 N.J. at 561, the Court explained, "[t]he exhaustion doctrine is not an absolute. Exceptions exist when only a question of law need be resolved, . . . when the administrative remedies would be futile, . . . when irreparable harm would result, . . . when jurisdiction of the agency is doubtful, . . . or when an overriding public interest calls for a prompt judicial decision . . . ."

Furthermore, "where the considerations that are relevant to the exhaustion requirement are in near-equipoise, . . . the court must weigh them carefully to find the proper balance." Abbott, 100 N.J. at 298 (citation omitted). "In general, in cases 'involving only legal questions, the doctrine of exhaustion of remedies does not apply.'" Ibid. (citation omitted).

On remand, after plaintiff amends its pleadings and defendants assert the affirmative defense of failure to exhaust administrative remedies, and the parties complete discovery, the court can then determine whether exhaustion of remedies "will serve the interests of justice." Id. at 297. If the interests of justice would be served by the exhaustion of remedies, the court would then be required to determine whether defendants met

their burden of proving plaintiff had not exhausted the administrative remedies available to it, or whether an exception to exhaustion, such as when compliance with the administrative process would be futile, excused plaintiff's failure to exhaust the administrative remedies set forth in N.J.S.A. 26:2J-8.1(e). However, that determination should occur after appropriate consideration of the record following discovery, and not on the pleadings.

C.

Plaintiff also contends the motion court erred by holding that all of its Medicare-related claims were preempted, arguing that the motion court's dismissal was overbroad and premature. We agree, and hold the motion court erred by dismissing all of plaintiff's Medicare-related claims with prejudice. We therefore vacate the dismissal and remand to permit plaintiff the opportunity to amend its pleading.

We review legal issues de novo, Toll Bros., Inc. v. Township of West Windsor, 173 N.J. 502, 549 (2002), and decide such legal questions without deference to a "trial court's construction of the legal principles." Lombardo v. Hoag, 269 N.J. Super. 36, 47 (App. Div. 1993).

The Medicare statute contains a preemption provision. 42 U.S.C. § 1395w-26(b)(3). "If the statute contains an express pre-

emption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 664 (1993), superseded by statute on other grounds.

The preemption provision in the Medicare statute, which was adopted in 2003, provides: "Relation to State laws. The standards established under this part . . . shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to [Medicare Advantage (MA)] plans which are offered by MA organizations under this part." 42 U.S.C. § 1395w-26(b)(3).

"Prior to 2003, the Medicare preemption provision stated that federal standards would supersede state law and regulations with respect to MA plans to the extent that such law or regulation was 'inconsistent' with such standards, and it identified certain standards that were specifically superseded." N.Y.C. Health & Hosps. Corp. v. WellCare of N.Y., Inc., 801 F. Supp. 2d 126, 135 (S.D.N.Y. 2011) (citing 42 U.S.C. § 1395w-26(b)(3)(A) (2000), amended by 42 U.S.C. § 1395w-26(b)(3) (2003)).

> The legislative history clarifies that the 2003 amendment was intended to increase the scope of preemption, noting that, "the [MA Program] is a federal program operated under Federal rules and that State laws, do not, and

should not apply, with the exception of state licensing laws or state laws related to plan solvency."

[Id. at 135-36 (citing H.R. Rep. No. 108-391 at 557); see also Do Sung Uhm v. Humana, Inc., 620 F.3d 1134, 1148-49 (9th Cir. 2010) (analyzing the intent behind and effect of the revised preemption provision).]

"The Secretary [of Health and Human Services] adopted the same reading of the Conference Report in promulgating the final rules: 'We believe that the Conference Report was clear that the Congress intended to broaden the scope of preemption in the [Medicare Prescription Drug Improvement and Modernization Act of 2003].'" Id. at 136 (quoting Do Sung Uhm, 620 F.3d at 1149-50 n.23). However, simultaneously, the "CMS explained that regardless of the increased breadth of the preemption provision, preemption 'operates only when CMS actually creates standards in the area regulated. To the extent we do not create any standards whatsoever in a particular area, we do not believe preemption would be warranted.'" WellCare, 801 F. Supp. 2d at 136 (quoting Medicare Prescription Drug Benefit, 70 Fed. Reg. 4194-01, 4320 (Jan. 28, 2005)).

The Medicare statute expressly preempts plaintiff's claims to the extent they seek to recover in excess of the statutorily imposed reimbursement rate. The Medicare statute and regulations explicitly list the services for which an MA organization must

reimburse a provider, cap the rates for non-participating providers, and include standards for the timing of claims. 42 C.F.R. §§ 422.100(b), 422.214(b).

Plaintiff essentially concedes that such claims are preempted. However, it argues that not all of its claims are preempted, as its "claims are much broader" than merely seeking recovery in excess of the statutorily imposed reimbursement rate. Plaintiff alleges that its damages arose from defendants "(1) claiming preauthorization was not obtained, when it was, to deny coverage based on [plaintiff]'s out-of-network status; (2) engaging in recoupment practices that violate New Jersey law; and (3) simply ignoring and refusing to process proper claims from the outset."

Those claims, to the extent that they seek recovery from defendants for failure to pay plaintiff's claims in accordance with the Medicare statute and regulations, should not have been dismissed. Indeed, there is no bar on claims seeking to enforce a provider's right to be paid the Medicare statutory rate. The motion court reached the same conclusion, and therefore limited the scope of its with-prejudice dismissal to allow plaintiff to seek recovery "on the basis that the [defendants] failed to pay or reimburse [p]laintiff's claims in accordance with the Medicare statute and regulations . . . ." Rather than dismissing

23

plaintiff's complaint, the court should have granted plaintiff leave to amend its pleading. Accordingly, we vacate the dismissal of all of plaintiff's Medicare-related claims, and remand to permit plaintiff the opportunity to amend its pleading.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION